UNITED STATES of America, Appellee,

v.

Jean F. SHAFFER, Appellant.

No. 91–3028.

United States Court of Appeals,
Seventh Circuit.

Argued April 2, 1993.

Decided May 21, 1993.

Patrick J. Chesley, Asst. U.S. Atty., Springfield, IL (argued), (J. William Roberts, U.S. Atty., on the brief), for appellee.

Jon Gray Noll, Springfield, IL (argued), for defendant-appellant.

Before POSNER and EASTERBROOK, Circuit Judges, and TIMBERS, Senior Circuit Judge.*

TIMBERS, Senior Circuit Judge.

Appellant Shaffer appeals from a judgment of conviction entered on a plea of guilty in the Central District of Illinois, Richard Mills, *District Judge,* for conspiracy to manufacture and distribute methamphetamine, in vio-

* The Honorable William H. Timbers, Senior Circuit Judge, United States Court of Appeals for the Second Circuit, sitting by designation.

lation of 21 U.S.C. § 846 (1988). He was sentenced to 12 years imprisonment.

His appeal brings up for review his contention that the court erred at the time of sentencing (1) in refusing to depart downward to a 10–year term recommended by the government pursuant to a plea agreement and (2) in incorrectly determining his base offense level under the sentencing guidelines based upon the quantity of methamphetamine which could have been produced.

We hold that 18 U.S.C. § 3742(a) (1988) does not permit appellate review of a downward departure. We dismiss Shaffer's challenge to the court's downward departure for lack of appellate jurisdiction. Furthermore, we reject Shaffer's challenge to the court's determination of his base offense level.

### I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

On May 8, 1990, an undercover agent of the Drug Enforcement Agency (DEA) delivered three kilograms of methylamine to Donna DeMoss at her house in Quincy, Illinois. Methylamine is a chemical used to produce methamphetamine, a controlled substance. DeMoss then travelled to a farmhouse located four miles south of Havana, Illinois. On May 18, 1990, federal agents searched the farmhouse. They found a methamphetamine laboratory within.

On May 23, 1990, appellant Shaffer and DeMoss were indicted by a grand jury on one count of conspiracy to manufacture and distribute more than 100 grams of methamphetamine and a second count of attempting to manufacture more than 100 grams of methamphetamine, both counts being in violation of 21 U.S.C. § 846 (1988). Both were present at the farmhouse when the agents conducted the search. DeMoss was released on bond prior to her trial. She fled the jurisdiction.

Shaffer entered into a plea agreement. This agreement involved Shaffer's guilty plea to Count I, conspiracy to manufacture and distribute methamphetamine, in exchange for the government dismissing Count II, attempted manufacture of more than 100 grams of the drug. Shaffer promised to assist the government in apprehending DeMoss, to testify against her, and to provide information relevant to other investigations. In anticipation of Shaffer's cooperation, the government agreed to ask the court not to impose a sentence in excess of 10 years. If either the applicable sentencing guideline range or a mandatory minimum sentence required a sentence in excess of 10 years, the government agreed that it would make a motion for downward departure from the applicable sentencing guideline range pursuant to sentencing guideline § 5K1.1 and 18 U.S.C. § 3553(e) (1988). On March 28, 1991, Shaffer pled guilty to the conspiracy count in accordance with the agreement.

A sentencing hearing was held on July 29, 1991. The attempt count was dismissed. Peter Poole, a chemist for the DEA, testified that he was present when the farmhouse chemical laboratory was searched. He was at the laboratory to assist in securing and dismantling it, to take inventory and samples of the items present, and to ensure the proper disposal of materials found at the site. Poole testified about the chemical operations and materials found at the laboratory. He stated that the laboratory was operated for the purpose of synthesizing methamphetamine. He based this opinion on items he found at the site: a chemistry book containing procedures for producing the drug, a laboratory notebook, and equipment and chemicals needed to produce methamphetamine. The government offered, and the court received, as evidence a DEA laboratory report containing a summary of the results of a laboratory analysis of drug evidence seized at the farmhouse. Poole described the method he used to determine the amount of methamphetamine which could have been produced at the farmhouse laboratory.

Poole further testified that he found a distillation apparatus in operation. At the end of the apparatus was a 12–liter collection flask. The flask contained at least 1,000 milliliters of reddish-brown liquid. Poole analyzed the liquid and found that 31 grams of pure methamphetamine were present in the 12–liter flask, that 72 grams of pure metham-

phetamine would have been converted if the distillation process had gone to completion, and that an additional 72 grams of pure methamphetamine could have been produced from other chemicals found in the flask. He concluded that a total of 175 grams of the pure drug could have been produced, even if sloppy laboratory procedures subsequently were employed.

At the sentencing hearing, Shaffer objected to paragraph 24 of the presentence report (PSR). This paragraph relied on Poole's chemical analyses to conclude that the laboratory could have produced well over 100 grams of pure methamphetamine. Shaffer's defense counsel filed a written objection, asserting that the quantities of chemicals seized and methamphetamine found were insufficient to produce more than 100 grams of methamphetamine. A letter from Shaffer's expert, a senior research microscopist from McCrone Associates, a consulting firm, was attached to the written objection. In this letter, the microscopist concluded, after analyzing Poole's laboratory reports, that only 0.713 grams of pure methamphetamine was measured and only 25.797 grams of a mixture containing methamphetamine were present.

In response, Poole testified that Shaffer's expert reviewed only the analysis performed on one 23 milliliter sample taken from the larger 1,000 milliliter sample seized at the farmhouse. Poole concluded that the microscopist listed the amount of methamphetamine found in the 23 milliliter sample but did not properly extrapolate that amount into the whole 1,000 milliliter quantity. The court then clarified with Poole that there were 31 grams of pure methamphetamine present, 72 grams to be converted and an additional 72 grams of the pure drug which could have been produced. The court denied the objection and confirmed its adoption of paragraph 24 of the PSR.

Looking to the sentencing guidelines, the court found Shaffer's base offense level to be 32 but then fixed this level at 30 after subtracting 2 points for acceptance of responsibility. Shaffer received a criminal history category of III. These findings resulted in a guideline range of 121 to 151 months.

A mandatory minimum sentence of 20 years was required for an offense involving 100 or more grams of methamphetamine committed by a defendant who had a prior drug conviction and who was given notice of such fact. 21 U.S.C. § 841(b)(1)(A)(viii) (1988). Shaffer had two prior felony drug convictions which would have subjected him to a mandatory life sentence. *Id.* The government however had not given him notice of its intention to use more than one of the prior convictions, as required by 21 U.S.C. § 851 (1988), because it mistakenly believed one of the convictions to be a misdemeanor. At the time of sentencing, the government admitted that it had made a mistake, stating that it would be unfair to sentence Shaffer to mandatory life imprisonment under the circumstances.

Pursuant to the plea agreement, the government requested a downward departure based upon Shaffer's substantial assistance. A 10–year sentence was recommended by the government, constituting a 50% departure from the mandatory 20–year minimum. Defense counsel agreed that a 10–year sentence was appropriate.

The court declined to follow the government's recommendation, refusing to depart below the guideline range. Instead, it departed from the 20–year sentence to impose a 12–year sentence. The court observed that Shaffer's drug offenses were serious and warranted a 25–year sentence. In light of his cooperation, however, he received a lesser term.

On appeal, Shaffer argues, as stated above, that (1) the court abused its discretion in refusing to grant a downward departure as requested by the government; and (2) the court erred in sentencing him based upon the quantity of pure methamphetamine he intended to produce. The government argues that, as an appellate court, we lack jurisdiction to review a refusal to depart downward or to review the extent of a downward departure, and that the district court correctly sentenced Shaffer based upon the amount of pure methamphetamine he intended to produce.

## II.

Shaffer asserts that the court abused its discretion in not granting the government's motion for a downward departure to a 10–year sentence. He claims to have received "no credit" for his complete assistance to the government. He also says that he was denied a fair opportunity to address the court's intention to consider his second felony drug conviction, which the government had not notified him would be used at sentencing. Moreover, he suggests that the court made an "upward departure" in sentencing him above the minimum imposed by the sentencing guidelines, and asserts that his sentence was "enhanced" by the court.

We agree that the government's analysis is the correct one. The applicable range under the sentencing guidelines was determined to be 121–151 months. Shaffer's prior felony drug conviction and the government's notice, however, subjected him to a mandatory minimum 20–year sentence with a maximum of life imprisonment. 21 U.S.C. § 841(b)(1)(A)(viii).

Section 5G1.1(b) of the sentencing guidelines provides, "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." Perhaps better stated, if the statutorily required sentence is greater than the upper limit of the guideline range, the sentencing court shall impose the statutory minimum sentence. U.S.S.G. § 5G1.1(b) Commentary; *United States v. Hayes*, 939 F.2d 509, 510 & 512 (7th Cir.1991), *cert. denied*, 112 S.Ct. 896 (1992). Thus, at sentencing, Shaffer could have anticipated a minimum sentence of 20 years and a maximum of life imprisonment by operation of § 5G1.1(b).

### A. *Downward Departure*

■ The government requested a downward departure for substantial assistance, recommending a 10–year sentence. This fulfilled the government's obligation under the plea agreement. The plea agreement, however, in no way bound the court to accept the government's recommendation of a 10–year sentence. Once the government moves for a downward departure pursuant to 18 U.S.C. § 3553(e) or U.S.S.G. § 5K1.1, the decision whether to depart is within the sound discretion of the district court. *Hayes, supra,* 939 F.2d at 511–12.

The court refused to depart downward from the 121 month minimum term provided by the sentencing guidelines, thus denying the government's request for a downward departure to 10 years. Yet, actually the court did depart downward from the statutory minimum of 20 years by imposing a 12–year sentence. This sentence was within the range provided by the guidelines in the absence of the statutory minimum. Shaffer's claim that the court did not depart is unfounded.

His claim that an upward departure was made is puzzling. His argument appears to be based on a misunderstanding of the relationship between the guidelines and statutory minima. The court departed down from a statutory minimum of 20 years to 12 years, not up from the calculated guideline minimum of 121 months to 12 years. Despite Judge Mills's beneficence, Shaffer challenges the court's refusal to depart further. Shaffer argues that the court should have imposed a 10–year term, as recommended by the government, sentencing him to a term below the 121–month minimum term provided by the guidelines.

■ Even if the sentencing guidelines were not superseded by the sentencing mandate of § 841(b), our jurisdiction to review a court's sentencing decision is limited to those grounds specified in 18 U.S.C. § 3742(a). Section 3742(a)(2) authorizes a defendant to seek review of a sentence when it "was imposed as a result of an incorrect application of the sentencing guidelines." In *United States v. Franz*, 886 F.2d 973 (7th Cir.1989), we held that § 3742(a) does not provide appellate jurisdiction to review a court's refusal to depart downward from the sentencing guidelines. In *Franz*, we dismissed a claim that a sentencing court's refusal to depart from the guideline range was an "incorrect application of the sentencing guidelines" within the meaning of § 3742(a)(2). *Id.* We also lack jurisdiction to review the extent of a downward departure. *United States v.*

*Dean,* 908 F.2d 215, 217–18 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2801, 115 L.Ed.2d 974 (1991). We can entertain neither a claim that the court did not depart enough, nor a claim that no departure was made.

Shaffer has not persuaded us to depart from our established precedents. Indeed, at oral argument he conceded that appellate jurisdiction is lacking.

We hold that Shaffer's claim that the court abused its discretion by failing to depart downward to impose a 10–year sentence must be dismissed for lack of appellate jurisdiction.

### B. *Amount of Drug*

■ Shaffer also claims that the court erred in applying the sentencing guidelines by calculating his sentence based upon the amount of pure methamphetamine which he intended to produce because that form of the drug is unusable and not ready for sale. He says that, under sentencing guideline § 2D1.1(c)(6), the court should have calculated his sentence by using a base offense level determined by the amount of methamphetamine mixture suitable for distribution which he could have produced. We agree with the government that neither § 841(b)(1) nor guideline § 2D1.1(c) support his claim.

Shaffer's argument based on guideline § 2D1.1(c) is misplaced. As stated above, U.S.S.G. § 5G1.1(b) operates to make § 841(b) the relevant authority for sentencing. Shaffer pled guilty to a conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a). Section 841(b)(1)(A)(viii) establishes statutory penalties for a violation of § 841(a) "involving 100 grams or more of methamphetamine, ... or 1 kilogram or more of a mixture or substance containing a detectable amount of methamphetamine, ...." The plain language of this section clearly differentiates between pure methamphetamine and a mixture or substance containing methamphetamine. A defendant's sentence can be determined based upon either the pure form or a mixture containing the drug.

At the time of sentencing, Judge Mills found that more than 100 grams of pure methamphetamine could have been produced at the farmhouse drug laboratory. Shaffer challenges the court's finding that the amount of chemicals seized and the amount of methamphetamine found were sufficient to produce more than 100 grams of the pure substance. He objects to DEA chemist Poole's technical description of how he calculated the amount of pure methamphetamine present in the 12–liter flask and the amount which could have been produced. He asserts that the court should have adopted the calculations he presented in a letter from his own expert.

■ Findings of fact in sentencing are reviewed to determine whether they are clearly erroneous. 18 U.S.C. § 3742(e). The factual finding of the quantity of drug present for sentencing purposes is reviewed for clear error. *United States v. Soria,* 965 F.2d 436, 443 (7th Cir.1992). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City,* 470 U.S. 564, 573–74 (1984) (citation omitted). We have no such conviction in the instant case.

Shaffer's claim is merely an attempt to reargue his objection to paragraph 24 of the PSR. At the sentencing hearing, the court heard both parties and entertained a "battle of the experts" regarding the amount of pure methamphetamine which could have been produced. DEA chemist Poole testified that Shaffer's laboratory could produce more than 100 grams of methamphetamine. Shaffer produced a letter from his expert concluding that the laboratory could not produce more than 100 grams. Poole testified that the calculations contained in Shaffer's expert's letter were inaccurate. The court questioned Poole to confirm that more than 100 grams of pure methamphetamine were involved. The court was not clearly erroneous in finding that the laboratory could produce more than 100 grams of pure methamphetamine.

We hold that the court properly sentenced Shaffer based on its finding that more than

100 grams of pure methamphetamine were involved in the offense.

### III.

To summarize:

Section 3742(a) does not provide appellate jurisdiction to review the extent or absence of a downward departure by a sentencing court. The court properly imposed sentence based upon a finding that the offense involved more than 100 grams of pure methamphetamine.

DISMISSED FOR LACK OF APPELLATE JURISDICTION.