UNITED STATES of America, Plaintiff–Appellee,

v.

Irwin BERMAN and Joseph E. Gussen, Defendants–Appellants.

Nos. 93–2590, 93–2637.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 23, 1994.

Decided April 12, 1994.

Matthew L. Jacobs, Asst. U.S. Atty. (argued), Milwaukee, WI, for U.S.

Thomas G. Halloran, Annice Kelly (argued), Fox & Fox, Madison, WI, for Irwin Berman.

David P. Lowe, Jacquart & Lowe, Milwaukee, WI, Robert B. Schulman, Joshua R. Treem (argued), Harry Levy, Schulman, Treem, Kaminkow & Gilden, Baltimore, MD, for Joseph E. Gussen.

Before POSNER, Chief Judge, and COFFEY and KANNE, Circuit Judges.

POSNER, Chief Judge.

The defendants were convicted of violating 18 U.S.C. § 658, which punishes anyone who, with intent to defraud, knowingly converts any property "mortgaged or pledged to" a federal or federally supported farm credit agency, such as the Farmers Home Administration. They were given prison sentences of 16 and 18 months, respectively, and ordered to make restitution of almost $500,000 to the unsecured creditors of D.C. Equipment, Inc. That firm had obtained a secured loan from Peshtigo National Bank, and the FmHA had guaranteed 90 percent of it. Peshtigo had then sold the guaranteed portion of the loan to Merrill Lynch, which in turn had resold it to Bradford Government Loan Services. D.C. Equipment defaulted, and Bradford invoked the FmHA's guaranty. The FmHA paid off Bradford, obtaining in exchange Bradford's interest in the loan. D.C. Equipment filed for protection under Chapter 11 of the Bankruptcy Code, and was authorized to auction off its surplus inventory. The defendants, who headed a nationwide auction firm, conducted the auction and siphoned off $500,000 of the proceeds. As a result, the FmHA was unable to obtain reimbursement, out of the proceeds of the auction, for the money it had paid Bradford under the guaranty.

The principal question is whether the defendants could be guilty of defrauding the FmHA when so far as appears they did not know that the latter had, by virtue of the transactions outlined above, a security interest in the auction proceeds. The Fifth Circuit held in *United States v. Grissom*, 645 F.2d 461 (5th Cir.1981), that this knowledge is required. Several cases, including one in this circuit, remark the defendant's intent to defraud the governmental entity, *United States v. Studley*, 892 F.2d 518, 526–27 (7th Cir.1989); *United States v. Lott*, 751 F.2d 717, 720 (4th Cir.1985); *United States v. Lisko*, 747 F.2d 1234, 1237 n. 3 (8th Cir.1984), but without holding that the defendant's knowledge of the governmental character of his victim is an element of the crime. *United States v. Porter*, 842 F.2d 1021, 1026 (8th Cir.1988), says that one element of the offense under section 658 is "that the defendant acted with intent to defraud the [federal entity]," but it is unclear from this formulation (or anything else in the opinion) whether this means more than that the defendant intended to defraud his victim, whoever the victim might be. Only *Grissom* holds that the defendant must know that his victim was federal, and we respectfully disagree with its holding.

The language of the statute, while consistent with the Fifth Circuit's interpretation, certainly does not compel it, and the Supreme Court's decision in *United States v. Feola*, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975), and many other decisions as well, are inconsistent with it. Feola had assaulted a federal officer. The Court held that Feola did not have to know that his victim was a federal officer. *Id.* at 684, 95 S.Ct. at 1263–64. The same principle has been applied by this and other circuits to a variety of property offenses against the federal government. *United States v. Harris*, 729 F.2d 441, 445 (7th Cir.1984) (18 U.S.C. § 657: theft from certain credit institutions); *United States v. Smith*, 489 F.2d 1330, 1334 (7th Cir.1973) (18 U.S.C. § 641: stealing federal property); *United States v. Hamilton*, 726 F.2d 317, 319–20 (7th Cir.1984) (18 U.S.C. § 665: theft of federal grant funds); *United States v. Sivils*, 960 F.2d 587, 595–96

(6th Cir.1992) (18 U.S.C. § 641: conversion of anything of value belonging to the United States); *United States v. Baker*, 693 F.2d 183, 185–86 (D.C.Cir.1982) (same); *Baker v. United States*, 429 F.2d 1278 (9th Cir.1970) (per curiam) (same). We cannot see why it should stop short at section 658. Section 658 is just another one of the myriad of statutes punishing such offenses, and it lacks any special language or history suggestive of an exceptional meaning.

*Grissom* is an outlier; it is also, we think, wrong. A statutory requirement that the victim of a federal crime be a federal agency or officer or recipient of a federal grant or otherwise affected with a federal interest identifies the federal interest in punishment; it is not intended to allow a person who commits a crime against the federal government or its officers or wards to escape punishment by pleading ignorance of his victim's identity. The deterrent effect of federal criminal punishment is enhanced by giving the assailant or the defrauder an incentive to find out whether his potential victims are federal, *United States v. Harris, supra*, 729 F.2d at 446, and, because federal criminal penalties are usually heavier than state ones and more effectively enforced, to steer clear of them. A requirement that the defendant know that his victims are federal would impair this incentive by allowing him to commit some crimes against federal victims without paying the federal penalty—perhaps many crimes, because proof of knowledge of the victim's federal identity would be difficult in many cases. The effect of this escape hatch would be to lower the expected cost of punishment to this type of offender.

It would be different if the only thing that marked the defendant's act as wrongful was the invasion of a federal interest. *United States v. Gregg*, 612 F.2d 43, 50 (2d Cir.1979). Then without knowledge of that interest the defendant would not have a guilty intent, which is required for most crimes. It was on this basis that *Morissette v. United States*, 342 U.S. 246, 270–71, 72 S.Ct. 240, 253–54, 96 L.Ed. 288 (1952), held that to be guilty of violating 18 U.S.C. § 641 (conversion of anything of value belonging to the United States) the defendant had to know that the

property in question had not been abandoned. But everyone knows that fraud is a crime, just as everyone knows that assault is a crime (*Feola*). The identity of the victim is irrelevant to the offender's culpability. There is no hint in *Morissette* that the Court thought it important whether the defendant knew whom the thing converted belonged to; only that it had not been abandoned and hence *could* be converted. *United States v. Feola, supra*, 420 U.S. at 685, 95 S.Ct. at 1264.

The next issue is whether the proceeds of the auction can fairly be considered to have been "pledged to" the FmHA, as charged in the indictment. There was no literal pledge. A literal pledge is a figurative hostage, requiring that the FmHA have had a possessory interest in the assets of D.C. Equipment, 1 Grant Gilmore, *Security Interests in Personal Property* § 1.1, at p. 5 (1965), which it did not. The statutory phrase "mortgaged or pledged to" is a clumsily archaic way of identifying *all* security interests held by the federal agencies that the statute seeks to protect. *United States v. Archambault*, 767 F.2d 402 (8th Cir.1985). Neither term is defined, but the intent to embrace all security interests can reasonably be inferred when we recall that the statute dates from the 1930s, when the terms "mortgage" and "chattel mortgage," which have since been superseded by "security interest," UCC 9–102(2), were used interchangeably to refer to nonpossessory security interests in personal property, and when the verb "mortgage" (the statute uses the verb, not the noun) was commonly used to refer to the granting of any such interest. *In re German Publication Society*, 289 Fed. 509 (S.D.N.Y. 1922) (L. Hand, J.).

So if the indictment had read "mortgaged or pledged to," as it should have, the defendants would have no leg to stand on. But it just says "pledged to." Yet "pledge," like "mortgage," has long been used loosely as well as tightly, to cover security interests in personal property that like the FmHA's in this case are not possessory interests, literal pledges. See, e.g., *Richmond Mortgage & Loan Corp. v. Wachovia Bank & Trust Co.*, 300 U.S. 124, 129, 57 S.Ct.

338, 339–40, 81 L.Ed. 552 (1937); *Buckeye Coal & Ry. v. Hocking Valley Ry.*, 269 U.S. 42, 46 S.Ct. 61, 70 L.Ed. 155 (1925); *McCandless v. Furlaud*, 296 U.S. 140, 174, 56 S.Ct. 41, 53, 80 L.Ed. 121 (1935) (dissenting opinion); *United States v. Chevalier*, 1 F.3d 581, 582 (7th Cir.1993); *Buck v. U.S. Dept. of Agriculture*, 960 F.2d 603, 610 (6th Cir.1992); *Uransky v. First Federal Savings & Loan Association*, 684 F.2d 750, 757 n. 7 (11th Cir.1982); *Rosenberg v. Son, Inc.*, 491 N.W.2d 71, 73 (N.Dak.1992). We think it fairly clear that the draftsmen of the original of section 658 (the Farm Credit Act, ch. 98, § 64(d), 48 Stat. 257, 268 (1933)) meant the term to be used broadly, that the average person who troubled to read the statute would interpret it broadly, and that the defendants therefore committed an offense within the scope of the indictment—provided the FmHA actually had a security interest in the proceeds of the auction. It did not if, as only defendant Gussen contends, what Peshtigo National Bank sold was not 90 percent of the loan to D.C. but a 90 percent *participation* in the loan. A sale or assignment of the loan itself or of any part of it would carry with it a proportionate assignment of the lender's security interest, while the sale of a participation would merely give the purchaser a claim to a proportionate share of the principal of and interest on the loan. *Singletary v. Continental Illinois National Bank & Trust Co.*, 9 F.3d 1236, 1239 (7th Cir.1993); Alan W. Armstrong, "The Developing Law of Participation Agreements," 23 *Bus. Lawyer* 689 (1968). The purchaser would be like a corporate shareholder; his rights would be against the seller (the original lender) rather than against the borrower; the seller would retain the security interest.

So if all the FmHA acquired was a participation in the loan by the Peshtigo bank, it had no security interest and the defendants therefore did not violate section 658. But in fact the instruments that assign the guaranteed part of the loan to the first assignee, Merrill Lynch, clearly assign 90 percent of Peshtigo's security interest along with the right to 90 percent of the principal of the loan and 90 percent of the interest on that principal. The instruments provide that in the event of a default both parties to the agreement, Peshtigo and Merrill Lynch (into whose shoes the FmHA eventually stepped), can foreclose. Foreclosure is the right of a secured creditor. UCC § 9–503. The instruments also provide for use of a special form for assignments only, and the transfer of the guaranteed portion of the loan is on that form. And nowhere does the term "participation" appear.

■ It is true that Peshtigo remained the secured party of record, the name on the financing statement filed in the UCC recording office; Merrill Lynch's name was not substituted. Failure to update the recorded financing statement, however, does not invalidate a transfer of the security interest, UCC § 9–302(2), since subsequent lenders remain on notice that the assets listed in the statement are subject to a prior lien. It is also true that at trial a government witness used the word "participation" to describe the FmHA's interest. But in context it appears that he was using the word nontechnically, to refer to the fact that the interest was limited to part of the loan. So at least a rational jury could conclude to the required degree of certitude, just as it could conclude, finally, that when D.C. Equipment's lawyer said in the notice of the auction that "on information and belief, only Deere and [Peshtigo] hold first and/or secondary liens on the personal property to be sold at said auction," he was mistaken.

■ Gussen (again not joined by his codefendant, Berman) has several complaints about the $500,000 order of restitution. The first is that the unsecured creditors of D.C. Equipment have been made whole through a suit that D.C. Equipment brought against Peshtigo National Bank for negligent handling of the auction proceeds, charging that Peshtigo's negligence had allowed the defendants to make away with the proceeds. But at most all that this implies is that the beneficiary of the restitution order was misnamed: that it should have been Peshtigo National Bank rather than D.C. Equipment. For even if the bank was negligent, it would be entitled to restitution from a deliberate wrongdoer; contributory negligence is not a defense to fraud. *AMPAT/Midwest, Inc. v.*

*Illinois Tool Works, Inc.,* 896 F.2d 1035, 1041 (7th Cir.1990). But what actually happened is that as part of its settlement with D.C. Equipment, Peshtigo assigned any right of restitution that it might have to D.C.'s unsecured creditors. A victim of crime to whom restitution is owed is entitled to name an alternative recipient. 18 U.S.C. § 3663(b)(4).

■ But where, the reader may wonder, is the FmHA in all this? It might seem that since the defendants were convicted of defrauding the FmHA, it is in the FmHA's favor that the order of restitution should run. But remember that the FmHA became involved with D.C. Equipment in the first place as a guarantor, and although it has already paid off on the guaranty (to Bradford), apparently it is content to absorb the loss rather than thrust it onto the hapless unsecured creditors. It did not, so far as appears, make a formal assignment, but we do not think a defendant has any equity to complain about the lack of that formality, although we cannot find a case that deals with the question. We may assume that the prosecutor's failure to object to the designation of someone other than the victim as the recipient of restitution would not be tantamount to assignment to that someone. The right to assign is the victim's. But even if it would be artificial to treat the prosecutor and the victim as one, the one being the United States, the decision to make the restitution order run in favor of the unsecured creditors was (so far as appears) made either by or with the consent of the FmHA, not unilaterally by the prosecutor.

A defendant can of course complain if restitution is ordered when there has been no loss to be compensated (the embezzled money was returned, the conspiracy broken up before any harm was done, the attempt frustrated, etc.), for then there is no statutory basis for the order. *United States v. Casamento,* 887 F.2d 1141, 1177–78 (2d Cir.1989); 18 U.S.C. §§ 3663(a)(1), (e)(1). This case may appear to come within that principle because D.C. Equipment's unsecured creditors suffered no loss as a consequence of the defendants' fraud; the defendants converted proceeds that would have gone entirely to D.C.'s secured creditors. But the FmHA suffered a loss, and the victim can assign his right of restitution to anyone he wants.

The district judge refused to impose a fine on the defendants, on the ground that they lacked the wherewithal to pay it. Yet he ordered them to make restitution of half a million dollars. There is at least a superficial, and certainly an unexplained, contradiction here. If the defendants' current poverty excuses them from having to pay a fine, even in installments (which is now permitted, 18 U.S.C. § 3572(d); U.S.S.G. § 5E1.2(g)), why does it not excuse them from paying a much larger sum? One possible answer is that although the installment periods for fines and restitution are the same—five years after release from prison, compare 18 U.S.C. § 3572(d) (fines) with 18 U.S.C. § 3663(f)(2) (restitution)—the sentencing guidelines say that the installment period for a fine *should* not exceed 12 months and *shall* not exceed the maximum term of probation. U.S.S.G. § 5E1.2(g). But the difference between the maximum fine that the guidelines authorize in this case ($40,000; see U.S.S.G. § 5E1.2) and the restitution ordered ($500,-000) swamps any difference in the periods over which they might be paid; and anyway the maximum probationary term of each defendant was five years. U.S.S.G. § 5B1.2(a)(1).

A better answer is that the defendants might be able, with luck and energy (they are formerly successful businessmen, after all), to pay either fines or restitution but not both, and that the latter is more important because it will go to compensate the principal victims of their crimes. Although *United States v. Ahmad,* 2 F.3d 245, 248 (7th Cir.1993), says, correctly as a general proposition, that "priority for victims does not excuse a fine," the statute provides that "the court shall impose a fine . . . only to the extent that such fine . . . will not impair the ability of the defendant to make restitution." 18 U.S.C. § 3572(b). Maybe another $40,000 would be the straw that broke the camel's back. Another possible reason for excusing the fine but not restitution is that different standards are used for assessing ability to pay. *United States v. Ahmad, supra,* 2 F.3d at 247.

But it is for the district judge to furnish the reason in the first instance. *Ahmad* holds that when a district judge orders restitution while withholding a fine on the ground of the defendant's inability to pay, and fails to explain his action, the case must be remanded for an explanation. A remand is necessary in this case for another reason. The judge left it to the probation officer to determine the installment period. But the fixing of that period is a judicial act. *Id.* at 248–49; *United States v. Gio,* 7 F.3d 1279, 1292 (7th Cir.1993); *United States v. Boula,* 997 F.2d 263, 269 (7th Cir.1993). Hence the convictions and Berman's sentence are affirmed, but Gussen's sentence is vacated and his sentencing proceeding remanded.

Because our decision creates a conflict with the Fifth Circuit on the issue of the knowledge required to violate 18 U.S.C. § 658, it was circulated before publication to all members of the court under 7th Cir.R. 40(f). There were no votes to hear the case en banc.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.