**UNITED STATES of America, Plaintiff–Appellee,**

v.

**William C. MURPHY, Defendant–Appellant.**

**No. 93–1911.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 26, 1994.

Decided June 28, 1994.

Frances C. Hulin, U.S. Atty., Danville, IL, Joseph Hartzler, Office of U.S. Atty., Springfield, IL (argued), for plaintiff-appellee.

George F. Taseff, Jennings, Novick, Taseff, Smalley & Davis, Bloomington, IL (argued), for defendant-appellant.

Before ESCHBACH, RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

William Murphy pled guilty to conspiracy to steal goods in interstate commerce and to transport those stolen goods in violation of 18 U.S.C. § 371. *See* 18 U.S.C. §§ 659, 2314. The district judge sentenced Mr. Murphy to 50 months' imprisonment, to be followed by 3 years of supervised release, and ordered restitution in the amount of $467,137.12, to be paid within three years of his release from prison. Mr. Murphy now appeals. He submits that, in ordering restitution, the district court failed to consider his financial status and ability to pay as required by 18 U.S.C. § 3664(a). Because we cannot ascertain the basis for the district court's decision to impose full restitution but not a fine, we vacate and remand the case to the district court for resentencing. We also remand because the district court improperly delegated to the United States Probation office its authority to set up a payment schedule for Mr. Murphy.

## I

### FACTUAL BACKGROUND

Mr. Murphy operated a trucking company out of Anniston, Alabama. For more than a year, Mr. Murphy conspired with Gerald Drake to steal at least 20 truckloads of goods which Mr. Murphy sold to food brokers. Their scheme involved the use of false names and false company identification numbers. Mr. Drake picked up the goods and delivered them to Mr. Murphy, who then sold them to food brokers. The food brokers purchased the goods with checks which Mr. Murphy either cashed or used to purchase cashier's checks. During the course of the conspiracy, Mr. Murphy and Mr. Drake stole over $500,000 worth of goods.

Nothing in the record reveals what became of the proceeds of the conspiracy. The presentence report (PSR) listed Mr. Murphy's assets as cash in the amount of $200, a car worth $2,500, and furniture worth $3,000. Mr. Murphy apparently filed petitions for Chapter 13 bankruptcy in January and March 1992, but both cases were dismissed within a few months.[1] His business liabilities totaled $75,648.21, and his family income was reported as negative $930 per month. Mr. Murphy's wife and two children wrote letters to the district court explaining their financial situation and requesting a lenient sentence for Mr. Murphy. His wife's letter stated that she was working at J.C. Penney for minimum wage and was collecting food stamps. Although at the sentencing hearing Mr. Murphy poignantly expressed his deep regret for having violated the law, he did not explain what had become of the proceeds of his crimes.

Despite Mr. Murphy's claim of indigence, the district court ordered full restitution in the amount of $467,137.12, to be paid jointly and severally with Mr. Drake within three years of Mr. Murphy's release from prison. In ordering restitution, the district court made reference to Mr. Murphy's failure to explain what became of the proceeds; however, the court apparently did not believe that it could rely on the possibility that Mr. Murphy might still have access to that money. As to how it expected Mr. Murphy to pay the full amount of restitution in the given period absent access to the conspiracy proceeds, the court stated only that Mr. Murphy would be

---

1. The record does not reveal the reason for the   dismissals.

able to work toward his college degree and to earn money in prison.[2]

The district court also imposed a special assessment of $350 ($50 for each count in the indictment). However, by checking a box in the "Statement of Reasons," the court waived all fines because of Mr. Murphy's inability to pay. The applicable fine under the guideline would have been between $7,500 and $75,000. *See* U.S.S.G. § 5E1.2. Finally, the district court delegated its authority to devise a payment schedule to the U.S. Probation Department.[3]

## II

## ANALYSIS

■ The Victim Witness and Protection Act (VWPA) instructs the sentencing court to impose restitution whenever possible. 18 U.S.C. § 3663(a)(2). Nonetheless, the decision to order restitution is within the discretion of the district court, and we therefore review that decision only for an abuse of discretion. *United States v. Boula,* 997 F.2d 263, 267 (7th Cir.1993); *United States v. Arvanitis,* 902 F.2d 489, 496 (7th Cir.1990); *United States v. Studley,* 892 F.2d 518, 531 (7th Cir.1989). In determining whether to

order restitution, § 3664(a) of the VWPA directs the sentencing court to consider "the amount of the loss sustained by the victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. § 3664(a). Thus, in reaching an appropriate order of restitution, the district court must balance "the victim's interest in compensation against the financial resources and circumstances of the defendant—all while remaining faithful to the usual rehabilitative, deterrent, retributive, and restrictive goals of criminal sentencing." *United States v. Mahoney,* 859 F.2d 47, 49 (7th Cir.1988). The defendant bears the burden of demonstrating by a preponderance of the evidence that, under the circumstances of his case, restitution is not warranted. 18 U.S.C. § 3664(d); *United States v. Ahmad,* 2 F.3d 245, 247 (7th Cir.1993).

■ Mr. Murphy argues that, in ordering full restitution, the district court failed to consider the mandatory factors enumerated in § 3664(a). He relies on the district court's

2. At the sentencing hearing, the district court stated:

Let me tell you a little something about that restitution. You're going to have fifty months, less what, eight? ... So you still have plenty of time to do two things.

One is to complete your college degree, Mr. Murphy. You're going to have time to do that. And the opportunity, I think. And, *secondly,* you're going to have an opportunity to become employed in the prison industries system.... You can earn some money. And while you're there you can use your time to good advantage. And I expect some good faith restitution.

Now, I don't know what happened to all that money. I have no idea. [The government] argues that it has not been explained where all of that money has gone to. And we're not talking, just apparently from a pragmatic standpoint, we're not talking · $467,000.00. We're talking about additional funds out of additional truckloads that you took care of after Drake.

And for the purpose that I am referring to this, it makes no difference. But it is unexplained. We don't know where it is. I don't know if you blew it, squirreled it away someplace. I don't know if you had trouble with the police.... There are a number of steps that we could take to try to trace this, but I'm

not privy to them. I don't know what they are. And you haven't come forward to try to explain this. And I have no conception of whether that money exists or whether it doesn't.

We are told by reviewing courts that we can't just bank upon possible windfall for restitution purposes and I accept that across the board. But you have an opportunity, and this is a fact, you have an opportunity in the time that you're in prison to get a job, and to earn some money, and to make some payments.

Now, your room and your board and your tailor and everything is going to be provided for you during that period. And whatever funds you earn in the prison industries may well go toward that restitution. And if you want to share some part of it with [your family], wonderful. But some good faith is going to be demanded of you. I'm not going to settle for anything less. Start thinking about it.

Tr. 46–48.

3. The court stated:

Now, I am delegating responsibility to the Probation Office, my eyes and my ears, my left and right arms. They act for me by delegation, and they will direct the supervision of this supervised release. They will set a payment schedule for you on restitution.

Tr. 46.

failure to mention his financial resources or his ability to pay. We shall sustain the district court's order of restitution if it is apparent that the district court considered the statutory factors. *United States v. Dorsey,* 27 F.3d 285, 290–91 (7th Cir.1994); *United States v. Simpson,* 8 F.3d 546, 551 (7th Cir. 1993). A defendant claiming that the district judge failed to consider a mandatory sentencing factor must show either that (1) it is not improbable that the judge failed to consider the mandatory factor and was influenced thereby, or (2) the judge explicitly repudiated the mandatory factor. *United States v. Gomer,* 764 F.2d 1221, 1223 (7th Cir.1985); *see also Mahoney,* 859 F.2d at 50. When ordering full restitution, the district court need not make express findings concerning the factors it is required to consider under the VWPA. *Ahmad,* 2 F.3d at 246–47. Consequently, this court often must infer from the district court's statements and the information before it that the mandatory factors were properly considered. *See id.; Gomer,* 764 F.2d at 1222–23.

The record reflects that the district court was aware of its duty to consider the mandatory factors, and that it had sufficient information concerning Mr. Murphy's financial resources and his family's needs to comply with its obligation to consider that information prior to ordering restitution. Early in the sentencing hearing the district court stated:

> His conviction here is for conspiracy. All of this falls within that umbrella. And he, therefore, may be held responsible by way of restitution. That, of course, is tempered with a further caviat [*sic*] set forth in the Seventh Circuit's *Mahoney,* based on his established financial condition and that is dependent.

Tr. 11. The PSR provided the district court with adequate information concerning Mr. Murphy's net worth, his family's monthly income and their expenses. It also included information about Mr. Murphy's educational background and his employment and military history. As noted by the government, the district court could not have ruled on the numerous objections filed by Mr. Murphy without having thoroughly reviewed the PSR. The sentencing transcript also reveals that the district court considered the needs of Mr. Murphy's dependents, including the "very touching letters" the court had before it. Tr. 38. Moreover, in arguing for full restitution, the government conceded that such an order would adversely affect Mr. Murphy's dependents. Tr. 16–17.

It thus appears that the district court was aware of the mandatory factors. It is unclear, however, whether the court disregarded Mr. Murphy's financial status in ordering full restitution. Because Mr. Murphy failed to account for the proceeds of the conspiracy, the district court could have relied on the possibility that Mr. Murphy would have access to the proceeds at some point in the future. *See United States v. Boyle,* 10 F.3d 485, 492 (7th Cir.1993) (upholding a district court order of restitution for $2 million because the defendant failed to account for the proceeds of his crime). However, the court expressly indicated its mistaken belief that it could not rely on that possibility. In ordering restitution, the district court stated:

> And for the purpose I am referring to [Mr. Murphy's failure to explain], it makes no difference.... We are told by the reviewing courts that we can't just bank upon possible windfall for restitution purposes and I accept that across the board.

Tr. 47. In *Mahoney,* we raised the concern that an impossible order of restitution could defeat the goals of sentencing. 859 F.2d at 52. But we noted that reliance on the possibility that a defendant might be able to pay in the future might be appropriate if the district court can articulate "a reasonable rationale for ordering full restitution," and if a factual basis in the record exists to support the stated rationale. *Id.* at 51 n. 6; *see also Ahmad,* 2 F.3d at 247 (stating that the possibility of ability to pay may be relied upon "provided there is some likelihood that [the defendant] will acquire resources in the future."); *United States v. Fountain,* 768 F.2d 790, 802–03 (7th Cir.1985) (upholding a restitution order of almost $500,000 because the defendants might have written a book, the proceeds of which could be used toward payment), *cert. denied,* 475 U.S. 1124, 106 S.Ct. 1647, 90 L.Ed.2d 191 (1986). Because the district court failed to articulate adequately

its rationale for ordering full restitution, we must remand this case for a fuller explanation. In this regard, we note that the district court failed to provide an explanation behind its decision to order such a great amount of restitution but not a fine. In *United States v. Berman,* 21 F.3d 753, 759 (7th Cir.1994), we stated that "when a district judge orders restitution while withholding a fine on the ground of the defendant's inability to pay, and fails to explain his action, the case must be remanded for an explanation." *See also Ahmad,* 2 F.3d at 248 (same). Although we recognize that 18 U.S.C. § 3572(b) "directs the courts to· impose a fine in a particular case 'only to the extent that such fine ... will not impair the ability of the defendant to make restitution,'" *United States v. Dorsey,* 27 F.3d at 291, the district court must state clearly that it declined to order a fine for this reason.[4]

 Finally, we must also vacate the restitution order because the district court inappropriately delegated to the probation department its authority to establish a payment schedule. In ordering restitution, the district court stated:

> Now, I am delegating responsibility to the Probation Office, my eyes and my ears, my left and right arms. They act for me by delegation, and they will direct the supervision of this supervised release. They will set up a payment schedule for you on restitution.

Tr. 46. The order itself read, "[p]ayments of restitution are to be made on a payment schedule established by U.S. Probation." We have made clear, however, that 18 U.S.C. § 3663 "does not permit a district judge to delegate to the administrative staff the specification of a payment schedule." *Ahmad,* 2 F.3d at 248–49. Such delegation gives "the probation office too much discretion for the management of the restitution order." *Unit-*

*ed States v. Gio,* 7 F.3d 1279, 1292 (7th Cir.1993). We have vacated similar orders in *Ahmad,* 2 F.3d at 248 (ordering defendant to pay restitution in "installments in such amounts at the discretion of the probation officer"), and *United States v. Boula,* 997 F.2d at 269 (ordering defendant to pay restitution in the amount of $5 million "when released from custody in a manner to be suggested by the probation officer.").

### Conclusion

For the foregoing reasons, we vacate the order of restitution and remand the case to the district court for resentencing.

VACATED AND REMANDED FOR RESENTENCING.

---

4. In *Berman,* 21 F.3d at 758, we noted that one reason a court might decline to order restitution but not a fine "is that although the installment periods for fines and restitution are the same—five years after release from prison, compare 18 U.S.C. § 3572(d) (fines) with 18 U.S.C. § 3663(f)(2) (restitution)—the sentencing guidelines say that the installment period for a fine *should* not exceed 12 months and *shall* not ex-

ceed the maximum term of probation. U.S.S.G. § 5E1.2(g)." However, it is for the district court, not this court, to provide such an explanation.