**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Richard YAHNE, also known as Richard Stone, Defendant–Appellant.**

**No. 94–3605.**

United States Court of Appeals,
Seventh Circuit.

Argued April 7, 1995.

Decided Aug. 31, 1995.

---

Before CUMMINGS, EASTERBROOK, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

After Richard Yahne had served a sentence for conspiracy relating to theft of goods in interstate commerce, imposed by a federal court sitting in Indiana, he was convicted and sentenced in this proceeding for later acts involving a conspiracy to steal an interstate shipment in Illinois. The district court sentenced Mr. Yahne to 18½ months of imprisonment, an additional period of supervised release, a fine and restitution. Mr. Yahne now appeals his sentence. For the reasons set forth in the following opinion, we affirm in part and reverse and remand in part.

I

On August 6, 1988, Mr. Yahne and three others stole a tractor-trailer carrying about 915 cases of cigarettes valued at approximately $500,000 from the Turner Trucking Company in Indianapolis, Indiana. On December 18, 1989, Mr. Yahne, again with several others, stole a trailer containing Panasonic electronic equipment worth over $580,-000 from the Chicago & North Western Transportation Company in Chicago, Illinois.

On April 19, 1990, Mr. Yahne was indicted in federal court in Indiana on charges relating to the Indiana theft of cigarettes. He eventually entered into a plea agreement regarding those charges. The district court in Indiana accepted Mr. Yahne's guilty plea and granted the United States Attorney's motion for a downward departure. Accepting the United States Attorney's recommendation, on July 3, 1991, the court sentenced Mr. Yahne to 434 days of incarceration.[1]

On November 4, 1993, Mr. Yahne and seven co-defendants were indicted in federal court in Illinois on charges relating to the Illinois theft of Panasonic merchandise. Again Mr. Yahne entered into a plea agreement with the United States Attorney. On June 14, 1994 he pleaded guilty to count one of the indictment, conspiracy to steal an in-

Barry Rand Elden, Asst. U.S. Atty., Frances Lipuma, argued, Office of U.S. Atty., Criminal Receiving, Appellate Div., Chicago, IL, for U.S.

John M. Beal, argued, Chicago, IL, for Richard Yahne.

1. The judgment in the Indiana case stated that Mr. Yahne's sentence was "time served, that is 434 days." R.101, attach. He was also sentenced to three years of supervised release.

terstate shipment. The agreement provided that Mr. Yahne would plead guilty to the single count of the indictment which alleged a conspiracy to commit an offense against the United States relating to the theft of an interstate shipment of property. The agreement recited that the parties agreed on the appropriate base level, on the value of the shipment, and on the appropriate criminal history points. The criminal history factor took into account the earlier conviction in the federal court sitting in Indiana. The parties to the plea agreement stipulated that, subject to any additional evidence that may alter the evaluation, the defendant was eligible for a reduction for acceptance of responsibility. They also agreed that a further reduction was appropriate because the defendant had acknowledged his responsibility in a timely manner. The agreement further stated that these calculations were preliminary in nature and that either party might submit a revised calculation to the district court. Finally, the agreement recited that it was governed by Federal Rule of Criminal Procedure 11(e)(1)(C) and that the parties agreed that the sentence imposed ought to include a term of imprisonment of "one-half the low end of the applicable Guideline range." If the court determined that another term of imprisonment was more appropriate, the agreement stated that the defendant had the right to withdraw the plea.

Before sentencing, Mr. Yahne argued to the district court that the sentence to be imposed in Illinois should be grouped with the July 3, 1991 sentence previously imposed in the Indiana case. At the sentencing hearing on October 25, 1994, the district court accepted Mr. Yahne's plea agreement and entered a judgment of guilty against Mr. Yahne on count one. The court rejected, however, Mr. Yahne's grouping request. It accepted the guideline range tentatively

mentioned in the plea agreement and then granted the government's Sentencing Guideline § 5K1.1 motion for a downward departure of one-half the low end of that applicable sentencing guideline range.[2] Accordingly, the court sentenced Mr. Yahne to a term of 18½ months of incarceration and three years of supervised release. It also ordered a fine of $4,000 and restitution in the amount of $580,000 to be paid in installments as determined by the probation department. Mr. Yahne now appeals the district court's determination with respect to the sentence.

## II

## DISCUSSION

### A.

Mr. Yahne submits that the district court erred in refusing to group or to consolidate the Indiana and Illinois cases for sentencing purposes. By refusing to group the offenses for purposes of sentencing, he contends, the district court arrived at the wrong guidelines range and therefore calculated the downward departure from the wrong starting point.

In submitting that grouping is appropriate, the defendant stresses the similarity of the crimes: Both were interstate conspiracies for theft; both extended into 1989, and thus were within a year of one another; at least four of the same conspirators were involved in both cases; and both were orchestrated by the same co-conspirator. Therefore, he submits, there is a sufficient nexus between the two cases to consolidate them under Guideline § 4A1.2 for sentencing purposes. According to Mr. Yahne, if the two cases were consolidated, a single sentence would be imposed for both cases, and the court would subtract the time served in Indiana.[3]

---

2. The court's sentencing calculations resulted in a total offense level of 15, a criminal history category of V, and a sentencing range of 37–46 months. Granting the government's downward departure motion, the court arrived at a sentence of 18½ months in prison.

3. By the defendant's analysis, if the Indiana and Illinois cases were consolidated, the calculations would result in these changes: (1) The criminal history points would be reduced from ten to

seven, and therefore the criminal history category would be reduced from V to IV; (2) the total amount of loss would increase, because it would include valuations from both offenses, and thus the total offense level would rise from 15 to 16; (3) the range of sentence would drop from 37–46 months to 33–41 months. The defendant assumed that the sentence would be set at 16½ months, which is half the low end of the guideline. In addition, by consolidating the sentences, he calculated that the original 434–day sentence

## B.

■ We must first consider whether we have jurisdiction to hear the contention presented to us. Our authority to review a district court's sentencing determination is circumscribed by statute. Under the current statute, our review of a sentence is limited to cases in which the sentence was (1) "imposed in violation of law," (2) "imposed as a result of an incorrect application of the sentencing guidelines," (3) "outside the applicable guideline range," or (4) "unreasonable." 18 U.S.C. § 3742(e), (f). Consequently, we lack jurisdiction to review a district court's discretionary rejection of a downward departure from a sentence within the applicable guideline range.[4] We likewise have no jurisdiction to review the extent of the downward departure.[5] However, if the district court's denial of a downward departure is based on the conclusion that it lacked authority to depart, that decision is a legal conclusion over which we have appellate jurisdiction. *United States v. Canoy*, 38 F.3d 893, 903 (7th Cir. 1994); *United States v. Wright*, 37 F.3d 358, 361 (7th Cir.1994).

Mr. Yahne bases his appeal on 18 U.S.C. §§ 3742(a)(1) and (a)(2):

(a) **Appeal by a defendant.**—A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines.

We turn, therefore, to Mr. Yahne's submission that the sentence imposed on him violated the law or was an incorrect application of the sentencing guidelines.

In *United States v. Blackwell*, 49 F.3d 1232 (7th Cir.1995), this court was faced with a situation that sheds significant light on our assessment of the jurisdictional issue before us today. In that case, as part of a plea agreement, the parties had agreed that the defendant should receive credit on his sentence for the twelve months of incarceration that he had served pursuant to a judgment of conviction entered in another district and for two months served in the custody of state authorities. *Id.* at 1240–41. The conduct punished by those earlier convictions was part of the conspiracy charged in the case for which the defendant was currently being sentenced; the conspiracy had been taken into account in determining the base offense level. Therefore, the parties agreed that a fourteen-month downward departure was in order. In making this request to the district court, the parties relied upon Guideline § 5G1.3.[6] That section provides that a term of imprisonment should be imposed to run concurrently when a defendant is serving an *undischarged* term of imprisonment for an offense that has been taken fully into account when determining the offense level of the present offense. The purpose of this provision is to ensure that a defendant is not penalized twice for the same conduct. Also, the second application note provides, to accomplish the same end, that the court ought to adjust the term of imprisonment for that portion of an earlier term of imprisonment that already has been served.[7]

Despite the joint request of the government and the defendant in *Blackwell*, the district court declined to give the requested credit. 49 F.3d at 1241. Upon examination of the record, the district court determined that a misrepresentation of the defendant had resulted in a lower sentence, twelve months, than he should have received with respect to the earlier crime. At the beginning of its analysis, the district court in *Blackwell* determined that § 5G1.3 on its

---

would be deducted from the resulting figure. The final sentence would be slightly more than four months of incarceration.

**4.** *United States v. Blackwell*, 49 F.3d 1232, 1241 (7th Cir.1995); *United States v. Burrows*, 48 F.3d 1011, 1019 (7th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 2632, 132 L.Ed.2d 872 (1995); *United States v. Franz*, 886 F.2d 973, 976–82 (7th Cir. 1989).

**5.** *United States v. Shaffer*, 993 F.2d 625, 628–29 (7th Cir.1993) ("We can entertain neither a claim that the court did not depart enough, nor a claim that no departure was made.").

**6.** *See infra* note 14.

**7.** *See infra* note 15.

face did not apply to the defendant because the defendant had completed his sentence for the related conduct. Therefore, there was no "undischarged term of imprisonment" against which the sentence could be adjusted. Although the rationale of § 5G1.3—to avoid double punishment—appeared to apply equally to time that had been served and for which the defendant had been discharged completely, the district court concluded that the terms of the section were not so encompassing.

In reviewing the decision of the district court not to give the defendant credit for the time served on the now-discharged but related sentence, we first determined that § 5G1.3 did not apply. Then, we held that we had no jurisdiction to review the decision of the district court. 49 F.3d at 1242. In engaging in this two-step process, the court first acknowledged that adjustments under § 5G1.3 were reviewable in this court, but pointed out that such adjustments ought not be considered downward departures but adjustments within the structure of the guidelines. *See United States v. Sarna,* 28 F.3d 657, 658–59 (7th Cir.1994); *United States v. Lechuga,* 975 F.2d 397, 400–01 (7th Cir.1992). We then determined that, because the provisions of § 5G1.3 were not implicated, any other adjustment of the sentence would constitute a downward departure over which the court, by the terms of the statute, had no jurisdiction. *Blackwell,* 49 F.3d at 1242.

We proceed in the same fashion in this case. The defendant claims that certain statutory or guideline provisions apply and require that the district court adjust the sentence to take into account the previous convictions. To the extent that Mr. Yahne claims that his sentence is the product of an error of law produced by the district court's misunderstanding or misapplication of these provisions, we have jurisdiction to review those claims. If we determine that these provisions are inapplicable, the defendant's only remaining contention is that a downward departure is appropriate, a contention that we cannot review.

### C.

Mr. Yahne substantiates his claim for consolidation of the Indiana offenses with the present offenses by asserting first that consolidation is governed by Federal Criminal Procedure Rules 8(a)[8] and 13.[9] It is clear, however, that neither rule applies. Neither rule pertains to a situation in which a defendant has completed his first sentence and then is charged with other offenses. Rule 8(a) allows the joinder, in the same indictment, of two offenses that are based on the same act or that have a common plan. Rule 13 allows the joint trial of two indictments if those indictments could have been joined. Mr. Yahne wants the two sentences, one already served, combined.

Mr. Yahne next claims that the district court erred in refusing to utilize sentencing guidelines §§ 3D1.2, 4A1.2, or 5G1.3 to group his earlier completed Indiana sentence with the sentence being calculated in this Illinois case.[10] These three guidelines present different grouping schemes for different situations, but none is applicable to Mr. Yahne's circumstances.

■ Section 3D1.2[11] deals with the grouping counts in an indictment and has no rele-

---

8. **Rule 8. Joinder of Offenses and Defendants (a) Joinder of Offenses.** Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

9. **Rule 13. Trial Together of Indictments or Informations**
   The court may order two or more indictments or informations or both to be tried together if the offenses, and the defendants if there is more than one, could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information.

10. Because Mr. Yahne was sentenced October 25, 1994, the sentencing guidelines effective as of November 1, 1993 are applicable to his sentence.

11. **§ 3D1.1.** *Groups of Closely Related Counts*
   All counts involving substantially the same harm shall be grouped together in a single group....

vance to Mr. Yahne's grouping for sentencing. In any event, there has been no factual showing that the offenses here can be characterized as involving the same harm as that term is employed in the guideline. Section 4A1.2 [12] does deal with prior sentences imposed in related cases and requires that the convictions be treated as one sentence for the purposes of computing the criminal history. As explained in Application Note 3 of the Commentary, prior offenses are related "if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." We know that, with respect to Mr. Yahne's Indiana and Illinois thefts, the offenses did not occur at the same time and were not previously consolidated. Moreover, as we have just noted, the defendant did not show that the two cases were related as part of a common plan: His argument to the court was the similarity, not singularity, of the plans. Mr. Yahne was required to show that the two "crimes were jointly planned or that the commission of one entailed the commission of another." *United States v. Sexton*, 2 F.3d 218, 219 (7th Cir.1993) (per curiam). He did not suggest any overarching goal behind a common scheme. *See United States v. Woods*, 976 F.2d 1096, 1099 (7th Cir.1992). Indeed, in *Woods*, cited as support by Mr. Yahne, we rejected the defendant's claim that a plan to rob as many food stores as he could was a "common scheme or plan" under § 4A1.2, *id.* at 1100, and also rejected his argument that two convictions

not consolidated for sentencing " 'would have been' consolidated except for the fortuity that they occurred on different sides of a county line," *id.* at 1102. The sentencing court noted specifically the different venues of Mr. Yahne's convictions.[13] These two sentences—imposed in separate proceedings several years apart, in different jurisdictions, by different judges, under different docket numbers, with no order of consolidation—are in no way related under § 4A1.2. *See United States v. Lewchuk*, 958 F.2d 246, 247 (8th Cir.1992) (collecting cases). Mr. Yahne has failed to meet his burden of showing that the two crimes were " 'related' in the sense meant by the Guidelines." *Sexton*, 2 F.3d at 219.

■ The last guideline on which Mr. Yahne relies is § 5G1.3(b).[14] He claims that § 5G1.3 "applies anytime a defendant is prosecuted 'in two or more federal jurisdictions, for the same criminal conduct or for different transactions that were part of the same course of conduct.' Guideline § 5G1.3, n. 2." Reply Br. at 7–8. Mr. Yahne's characterization of that guideline is simply incorrect. As we noted in our discussion of *Blackwell*, the guideline applies when a defendant is "subject to an undischarged term of imprisonment" in connection with the earlier conviction, and when the first conviction was part of his relevant conduct for which the second sentence was imposed. *Blackwell*, 49 F.3d at 1241. Section 5G1.3(b) explicitly requires that the defendant be subject to an undischarged term of imprisonment. The

12. **§ 4A1.2. *Definitions and Instructions for Computing Criminal History***
(a) *Prior Sentence Defined*
(1) The term "prior sentence" means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense.
(2) Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c)....

13. We reject the defendant's contention that the court failed to make findings of fact or conclusions of law before rejecting his motion for consolidation. The court's statements and questions to the parties, as they presented their positions concerning each element of the sentence, make

clear that it based its decision on the evidence of record and the substance of the guidelines. The district court correctly applied the guidelines to the findings of fact that were not clearly erroneous. 18 U.S.C. § 3742(e); *United States v. Sebero*, 45 F.3d 1075, 1077 (7th Cir.1995).

14. **§ 5G1.3. *Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment***

(b) If . . . the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.

background statement, application notes and commentary all repeat the same limitations.[15] The government states, and the defendant does not dispute, that Mr. Yahne had completed his prior sentence before he was sentenced on the Illinois charge in federal court. Our court has stated clearly that § 5G1.3 "on its face does not apply" to a defendant who had completed his sentence by the time of his second sentencing. *Id.; see also United States v. Ogg*, 992 F.2d 265, 267 (10th Cir. 1993) (interpreting 1991 guideline § 5G1.3); *United States v. Adeniyi*, 912 F.2d 615, 618 (2d Cir.1990) (explaining in dictum that § 5G1.3 did not apply because the defendant had completed his state sentence before his federal sentence was imposed).

We think that it is very clear that neither the Federal Rules of Criminal Procedure nor the provisions of the Sentencing Guidelines cited by Mr. Yahne are a basis on which to find that the sentence of 18½ months imposed on the defendant was in violation of law or an incorrect application of the guidelines under 18 U.S.C. § 3742. Because Mr. Yahne is unable to present any misunderstanding of law or misapplication of the guidelines as a basis for the reversal of the district court's sentencing decision, as in *Blackwell* we have no jurisdiction to review further the sentence imposed by the district court. *See Blackwell*, 49 F.3d at 1241 (citing cases); *United States v. Winston*, 34 F.3d 574, 581 (7th Cir.1994) (stating rule that there is no jurisdiction to review appeal of a "legal sentence that is *within* the applicable sentencing guideline range"). Mr. Yahne had bargained for a sentence that was one-half the low end of the applicable sentencing range and retained the right to dispute the computation of the applicable sentencing range. There is no question, however, that the district court correctly ascertained that sentencing range and therefore chose the correct starting point for the downward departure.

## D.

The district court ordered Mr. Yahne to pay a fine of $4,000 and restitution of up to $580,000 in installment payments during the three-year term of supervised release. The court's judgment stated that payment was based on Mr. Yahne's ability to pay, as determined by the probation office. Mr. Yahne does not contest the amounts of the fine and restitution. He claims solely that the district court erred in delegating to the probation office the establishment of a payment schedule for the fine and restitution. The government confesses error on this point. It acknowledges that the district court's ruling does not comport with *United States v. Murphy*, 28 F.3d 38, 39–42 (7th Cir.1994), and other recent authorities that require court determination of payment schedules.

The parties are correct. As we stated in *Murphy*, "18 U.S.C. § 3663 'does not permit a district judge to delegate to the administrative staff the specification of a payment schedule.'" *Id.* at 42 (quoting *United States v. Ahmad*, 2 F.3d 245, 248–49 (7th Cir.1993)). For this reason, we remand this case to the district court to allow that court to set a payment schedule for the fine and restitution.

## Conclusion

For the foregoing reasons, we hold that the district court erred in delegating to the probation office the specification of a payment schedule for the fine and restitution. We therefore remand the case to the district court for the limited purpose of establishing such a schedule. We further hold that the district court committed no legal error in the determination of the defendant's sentence. We are without jurisdiction to review the sentence on any other basis.

---

**15.** *See, e.g.,* U.S.S.G. § 5G1.3, comment. (n. 2): Subsection (b) ... addresses cases in which the conduct resulting in the undischarged term of imprisonment has been fully taken into account under 1B1.3 (Relevant Conduct) in determining the offense level for the instant offense. This can occur, for example, where a defendant is prosecuted in both federal and state court, or in two or more federal jurisdic-

tions, for the same criminal conduct or for different criminal transactions that were part of the same course of conduct.

Such guideline commentary is binding on our court because it interprets or explains the guideline. *Stinson v. United States*, —— U.S. ——, ——, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993).

Affirmed in Part; Reversed and Remanded in Part.