65 F.3d 170
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James M. CHAPLIN, Defendant-Appellant.
 No. 94-2876.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 10, 1995.*
Decided Sept. 5, 1995.
 
 Before FAIRCHILD, CUDAHY and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 James Chaplin, having been resentenced by the district court in conformity with our instructions in United States v. Chaplin, 25 F.3d 1373 (7th Cir.1994), now appeals the district court's order that he pay restitution in the amount of $47,410. For the following reasons, we affirm.
 
 
 2
 * BACKGROUND
 
 A. Facts
 
 3
 We set forth the facts relevant to this litigation in United States v. Chaplin, 25 F.3d 1373 (7th Cir.1994); we assume familiarity with that opinion. In June 1989, Mr. Chaplin contracted with the State of Wisconsin to build pit toilets at five state parks for a total contract price of $237,126. In May 1990, Wisconsin held the Chaplin contracts in default because the work was not being completed according to schedule. Wisconsin then filed a claim against Mr. Chaplin's bonding company, Transamerica Premiere Insurance ("Transamerica"). As required under the terms of the bond, Transamerica hired and paid another contractor to complete the project. Transamerica also compensated Chaplin's unpaid subcontractors and material suppliers. Transamerica further sought the return from Mr. Chaplin of various construction materials, which had been delivered to the construction sites, but not used. After Chaplin refused to comply, Transamerica brought a replevin suit against him in August 1990. Chaplin testified that the materials were located in a storage trailer in the overflow parking area of the Peninsula State Park. Upon later inspection, however, agents of Transamerica were unable to locate the trailer or the materials.
 
 
 4
 Chaplin and his wife thereafter filed a joint bankruptcy petition under chapter 7 of the Bankruptcy Code on October 15, 1990. Transamerica filed a consolidated amended adversary complaint against the Chaplins on May 29, 1991.
 
 B. Prior Proceedings
 
 5
 In November 1992, a federal grand jury returned a four-count indictment against Mr. Chaplin for bankruptcy crimes stemming from his involvement in the pit toilet project with Wisconsin. Count One charged Chaplin with knowingly and fraudulently transferring and concealing $8,000 by turning the funds over to his father-in-law, Mr. Voss, eight days after he filed his bankruptcy petition, in violation of 18 U.S.C. Sec. 152. The other three counts were based upon perjury arising out of deposition statements he made during his bankruptcy, in violation of 18 U.S.C. Sec. 1621. Count Two alleged that Chaplin perjured himself when he denied that he turned the $8,000 over to Mr. Voss. Count Three similarly alleged that Chaplin perjured himself when he denied that he placed construction materials in a garage at the Voss residence in August 1991. Count Four alleged that Chaplin committed perjury when he denied that he removed these construction materials from the garage at the Voss residence in January 1992.
 
 
 6
 On May 21, 1993, a jury convicted Mr. Chaplin on all four counts. The district court sentenced him to serve one year in prison, concurrently, on each of the four counts. It also ordered Chaplin to make restitution of $47,410. Transamerica asked for restitution in the amount of $261,880.41, which included an amount disbursed to fulfill its obligations under the Chaplin bond. The government sought restitution, however, for only the fair market value of the materials ($47,410) hidden in the garage of Mr. Chaplin's father-in-law. Mr. Chaplin challenged the restitution amount on grounds unrelated to the instant appeal, and the district court ultimately rejected his arguments. On appeal, Mr. Chaplin contested the three counts that were based upon perjury arising out of bankruptcy depositions. Chaplin appealed neither Count One nor the restitution order. United States v. Chaplin, 25 F.3d at 1376.
 
 
 7
 On June 6, 1994, we reversed Chaplin's convictions on Counts Two and Four on the ground that the government had failed to comply with the "two witness rule." We held that the uncorroborated oath of one witness was not sufficient to establish the falsity of Mr. Chaplin's testimony in regard to his denial that he gave his father-in-law $8,000 on a particular date (October 23, 1990) and to his denial that he removed building materials from his father-in-law's garage. Chaplin's conviction on Count Three was affirmed.
 
 
 8
 On remand for reassessment of the sentence, the district court modified the sentence to reflect that Counts Two and Four were dismissed. The court reduced the term of imprisonment for Counts One and Three to time served as of August 5, 1994. The amount of supervised release and restitution was unmodified, except to the extent that, because two counts had been dismissed, Mr. Chaplin was sentenced to supervised release for a term of two years for the two remaining counts only, to run concurrently. The restitution order was challenged perfunctorily, but the district court refused to modify its restitution decision.[1]
 
 II
 ANALYSIS
 1.
 
 9
 Mr. Chaplin submits that the district court erred by failing to make explicit findings as to how the garage materials at issue were valued at $47,410. Specifically, Mr. Chaplin states that "there was no testimony regarding the size of the garage, its cubic space, the size of the pit toilets, or how many pieces of personal property ... could have been stored in the garage.... [T]here is no evidence in the record regarding the value of the pit toilets ... and no evidence with respect to the actual economic loss of these pit toilets to Transamerica Premium Insurance Company." Appellant's Br. at 9-10. A decision to order restitution is within the discretion of the district court, and we review that decision, therefore, only for an abuse of discretion. United States v. Murphy, 28 F.3d 38, 40 (7th Cir.1994); United States v. Boula, 997 F.2d 263, 267 (7th Cir.1993). Because Mr. Chaplin failed to object at resentencing on the specific ground he now raises, we review the restitution order for plain error. United States v. Simpson, 8 F.3d 546, 551 (7th Cir.1993); United States v. Gomer, 764 F.2d 1221, 1223-25 (7th Cir.1985).
 
 
 10
 In determining whether to order restitution, Sec. 3664(a) of the Victim Witness and Protection Act ("VWPA"), directs the sentencing court to consider "the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. Sec. 3664(a). As Mr. Chaplin correctly points out, the amount of restitution that the sentencing court imposes "must be definite and ... limited by the victim's actual loss." United States v. Mischler, 787 F.2d 240, 244 (7th Cir.1986); see also United States v. Brothers, 955 F.2d 493, 496 (7th Cir.), cert. denied, 113 S.Ct. 142 (1992). However, when the district court orders full restitution, as was the case here, it need not make express findings concerning the statutory factors it is required to consider under the VWPA. See Murphy, 28 F.3d at 41; United States v. Arvanitis, 902 F.2d 489, 496 (7th Cir.1990). Consequently, on review, an appellate court "often must infer from the district court's statements and the information before it that the mandatory factors were properly considered." Murphy, 28 F.3d at 41. A defendant claiming that the district court failed to consider a mandatory factor must show either that (1) it is not improbable that the judge failed to consider the mandatory factor and was influenced thereby, or (2) the judge explicitly repudiated the factor. Murphy, 28 F.3d at 41; Gomer, 764 F.2d at 1223.
 
 
 11
 Under 18 U.S.C. Sec. 3664(d),[2] the government has the burden of demonstrating the amount of the loss sustained by the victim; the court should resolve any dispute as to the proper amount of restitution by the preponderance of the evidence. See Arvanitis, 902 F.2d at 496. At Mr. Chaplin's initial trial, testimony was offered that as a result of Transamerica's indemnification on account of Mr. Chaplin's default, Transamerica paid the State of Wisconsin $95,000 for materials purchased, but not used in the project. These materials were identified specifically as toilet partitions, stalls, doors, toilets, urinals, and other various construction hardware. These items corresponded identically to the materials displayed in the photograph of the garage of Chaplin's father-in-law. For sentencing purposes, a Transamerica witness testified that the fair market value of the materials in the garage was $47,410. Mr. Chaplin made no objection and offered no contrary evidence at trial or sentencing as to this determination. The statute requires nothing more in the way of factual findings unless the restitution amount is disputed. See 18 U.S.C. Sec. 3664(d); see also United States v. Gabriele, 24 F.3d 68, 72-73 (10th Cir.1994). With such undisputed evidence of record, Mr. Chaplin's unsubstantiated speculation on appeal that the estimation may have been incorrect hardly constitutes a showing of error on the part of the district court.
 
 
 12
 The amount of restitution was determined correctly. First, the district court had before it a complete presentence investigation. Mr. Chaplin was given a full opportunity to raise his objections to the presentence report that were then evaluated by the investigating probation officer. See United States v. Helton, 975 F.2d 430, 432-33 (7th Cir.1992). The report contained ample information on Transamerica's losses in the case, and explained why Transamerica should be considered the "victim" under the VWPA; under the bonding agreement, after it reimbursed the State, Transamerica could recover its expenditures. In addition, the district court heard uncontested evidence from counsel representing Transamerica that, as a result of its indemnification of Chaplin, Transamerica paid to Wisconsin approximately $95,000 for materials purchased, but never used in the projects begun by Chaplin. The items for which Wisconsin was reimbursed were identified specifically and were identical to those materials that appeared in the photograph of the garage of Chaplin's father-in-law. Transamerica estimated the fair market value of the garage material at $47,410. The district court, in its discretion, elected to rely on the figures obtained from Transamerica and provided by the probation officer in the presentence report. Further, the district court considered fully, among other factors, Mr. Chaplin's financial condition and negative net income, as well as his family's financial condition, and concluded that "[t]he restitution order will not be disturbed in any way." Tr. VII at 5.[3] Unbridled speculation in this successive appeal that the figures relied on by the district court did not account for the "quantity, size, or value of the 'materials' which were place in and moved out of the ... garage" will not support a finding that the district court abused its discretion by determining that Mr. Chaplin should pay restitution in the amount of $47,410.
 
 2.
 
 13
 Mr. Chaplin also submits that he was denied effective assistance of counsel on his direct appeal because his attorney failed to challenge the $47,410 restitution amount.[4] We note initially that because counsel is presumed effective, a defendant bears a heavy burden in making out a successful ineffective assistance challenge. United States v. Jimenez, 992 F.2d 131, 134 (7th Cir.1993). Additionally, we have emphasized repeatedly that "[a] defendant who raises an ineffectiveness claim on ... appeal without supplementing the record faces an even more arduous task, for without such evidence a seeming lapse or error by counsel will be presumed a tactical move flawed only in hindsight." United States v. Fish, 34 F.3d 488, 492 n. 1 (7th Cir.1994) (citations and quotations omitted). Nevertheless, Mr. Chaplin has requested specifically that we address the merits at this time.
 
 
 14
 To establish a claim of ineffective assistance of counsel, a defendant must satisfy the two components of Strickland v. Washington, 466 U.S. 668 (1984). First, the defendant must demonstrate that counsel's performance "fell below an objective standard of reasonableness." Id. at 688. Second, if the first showing is satisfied, then a defendant must demonstrate that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. To meet this second prong, the defendant must show that "the deficient performance prejudiced the defense," id. at 687, and that it "rendered the result unreliable or the proceeding fundamentally unfair. Durrive v. United States, 4 F.3d 548, 551 (7th Cir.1993). Unless the defendant makes both showings, under Strickland, we cannot conclude "that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." 466 U.S. at 687. "As we have often stated, conclusory allegations do not satisfy Strickland's prejudice component." Boyles, 57 F.3d at 551 (citations and quotations omitted); see United States v. Badger, 983 F.2d 1443, 1458-59 (7th Cir.) ("The deficiency is judged by whether the attorney acted with reasonable professional judgment falling within the wide range of professionally competent assistance."), cert. denied, 113 S.Ct. 2391 (1993).
 
 
 15
 When counsel's performance is assessed in light of the entire record, see Fish, 34 F.3d at 494, we cannot accept the contention that Mr. Chaplin's counsel acted below the "prevailing professional norms," United States v. Mojica, 984 F.2d 1426, 1452 (7th Cir.), cert. denied, 113 S.Ct. 2433 (1993), nor can we conclude that Mr. Chaplin was prejudiced. See United States v. Anderson, No. 93-3462, 1995 WL 440817, at * 8 (7th Cir. July 26, 1995). Mr. Chaplin has offered nothing but unsupported, conclusory allegations to set forth his ineffective assistance of counsel claim. He has failed to highlight any evidence, much less explain how and why the sentencing court would have reduced the restitution amount, had his counsel contested that amount at trial.
 
 Conclusion
 
 16
 For the foregoing reasons, we affirm the judgment of the district court.
 
 
 17
 IT IS SO ORDERED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and record
 
 
 [1]
 Mr. Chaplin's counsel at resentencing argued solely the following:
 And also Mr. Chaplin would like his restitution reduced. Originally he was sentenced to forty-seven thousand and some odd dollars. And in light of the fact that Mr. Chaplin has no assets basically and has a negative net income of $375 a month the restitution is quite probably, you know, in all reality won't even be paid in the full amount and it would be quite burdensome for him even to make small payments on that. So he would ask that that be reduced to maybe 20,000 and be released or have his sentenced [sic] reduced to eleven months.
 Tr. VII at 3.
 
 
 [2]
 18 U.S.C. Sec. 3664(d) provides in relevant part:
 (d) Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government. The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant and such defendant's dependents shall be on the defendant. The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires.
 
 
 [3]
 The district court, at the original sentencing proceedings, stated:
 The judgment will include a restitution order of $47,410. No fine given the restitution order that's entered. As far as restitution is concerned, I recognize that it may be impossible or at best very difficult in this case. But a good faith effort towards restitution, developing a plan of restitution is appropriate.
 Tr. VI at 19-20. At the resentencing proceedings, the court stated:
 The restitution order will not be disturbed in any way. There is a period of two years supervised release concurrent that will take effect upon the release of Mr. Chaplin from custody. During that period he'll be expected as are all defendants to make a good faith effort to reach restitution, to reach the goal of making total restitution here. All restitution will be due and owing consistent with his ability to pay. And I will revisit the restitution matter at the end, I'm sure, of supervised release if it is unsatisfied. And if it's unsatisfied due to legitimate inability to pay then he will in likelihood be excused from meeting that Court obligation. But if he does come into money and does not make an effort to pay here then that will be a matter of concern at the close of his supervised release period.
 Tr. VII at 5.
 
 
 [4]
 Following resentencing, Mr. Chaplin was appointed new counsel