UNITED STATES of America,
Plaintiff–Appellee,

v.

Carol J. LAMPIEN, Defendant–Appellant.

No. 95–3396.

United States Court of Appeals,
Seventh Circuit.

Argued March 26, 1996.

Decided July 12, 1996.

Cheryl B. Schacht (argued), Office of the U.S. Attorney, Madison, WI, for Plaintiff–Appellee.

Brendan J. Rowen (argued), Wauwatosa, WI, for Defendant–Appellant.

Before ESCHBACH, MANION and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Pursuant to a written plea agreement, Carol J. Lampien pleaded guilty to a one-count information charging her with embezzling funds from an insurance company in violation of 18 U.S.C. § 1033(b)(1)(A). Lampien was sentenced to twenty-four months in prison, to be followed by a three-year term of supervised release. Pursuant to the Victim and Witness Protection Act of 1982 ("VWPA"), the district court ordered Lampien to pay full restitution to the victim, Wausau Insurance Company (Wausau), in the amount of $498,972.94. In addition to requiring Lampien to make monthly payments of $350 in partial satisfaction of the restitution obligation, the court also directed her to make a lump sum payment that included the execution of a quitclaim deed conveying her interest in her home to Wausau. The court further ordered Lampien to provide it with a copy of her mother's will and of Lampien's disclaimer of interest in her mother's estate, by which she had allowed her share of the estate to pass to her son, Terry J. Lampien. During the pendency of this appeal, it was determined that Lampien's disclaimer of interest was invalid, and both Lampien and her son were subsequently held in civil contempt for refusing to relinquish assets that were ordered transferred to the victim as part of Lampien's restitution obligation.[1] Carol Lampien appeals the district court's restitution order on the grounds that (1) her interest in her home is protected by the Wisconsin homestead exemption, Wis. Stat. § 815.20 (1994), which prevents the court from ordering her to relinquish that interest in favor of any creditor, with certain enumerated exceptions she asserts are inapplicable to this case, (2) the district court had no authority under the Victim and Witness Protection Act of 1982, as amended, 18 U.S.C. §§ 3663–3664 (1990), to order Lampien to quitclaim her home to Wausau, and (3) the court abused its discretion in ordering the payment of full restitution, and in requiring Lampien to make monthly restitution payments that are clearly beyond her means.

1. Terry Lampien appealed the district court's contempt citation in case no. 96–1902, consolidated for disposition with the present case. Terry's appeal was subsequently dismissed at his own request pursuant to Fed.R.App.P. 42(b) by this court's order of June 5, 1996.

For the reasons that follow, we vacate the restitution order and remand for further proceedings.

## I. BACKGROUND

At the time that Wausau discovered the embezzlement, Lampien had been employed in the company's Milwaukee branch office for forty-two years. In early August 1993, Lampien held the position of Claims Services Representative in the Workers' Compensation Claims Unit when she began misappropriating funds by issuing checks to fictitious payees on existing workers' compensation accounts and having the checks mailed to her home. To complete the fraudulent scheme, Lampien forged the signatures of the nonexistent payees, endorsed the checks over to herself, and cashed them. The embezzlement escaped detection until mid-March 1995, when it was accidentally discovered by two of Lampien's co-workers. At that time, Wausau determined that 521 fraudulent checks totalling $498,972.94 had been negotiated by Lampien in this manner. When confronted with evidence of the embezzlement, Lampien freely admitted what she had done, and explained how she was able to conceal her activities from Wausau for a period of approximately nineteen months. Lampien then entered into a plea agreement with the government, conceding responsibility for the total amount of loss that had come to light as a result of Wausau's investigation. On July 19, 1995, she pleaded guilty to embezzlement from an insurance company in violation of 18 U.S.C. § 1033(b)(1)(A). The district court ordered the preparation of a presentence report and advised Lampien that she would be required to cooperate in its preparation by providing the probation department with further information concerning her offense.

Lampien's sentencing hearing took place on September 27, 1995. At the hearing, the government advised the court that Lampien had been highly reluctant to cooperate with the probation department in disclosing her assets, and that she had failed to inform the probation department that her mother had

died and had left an estate. Although the sentencing report was quite vague in accounting for Lampien's disposition of the embezzled funds, the government did not indicate that any part of those funds remained in Lampien's control. In addition to sentencing Lampien to a twenty-four month term of imprisonment and three years of supervised release, the district judge, over defense counsel's objections, ordered Lampien to make full restitution to Wausau in the amount of $498,972.94. The restitution obligation took the form of a lump sum payment due within thirty days, followed by a series of installment payments of at least $350 per month, set to begin thirty days from the date of sentencing and to terminate six months prior to the expiration of Lampien's supervised release. To satisfy the initial lump sum payment, the district court ordered Lampien to execute a quitclaim deed conveying her interest in her home to Wausau.[2] The court also ordered Lampien to transfer the value of her ITT–Hartford variable rate annuity to Wausau and to pay Wausau $7,500 in cash, all within thirty days of the sentencing hearing. The district court estimated the value of the assets Lampien was ordered to relinquish to be $99,172, or approximately one-fifth of the total restitution owed to Wausau, thus leaving approximately $400,000 to be paid in monthly installments over a period of fifty-four months.

In setting the minimum monthly installment payment of $350, the judge relied on the budget submitted by Lampien to the probation department and incorporated in Lampien's presentence report. Accepting the accuracy of the figures in the presentence report, the court noted that Lampien was due to receive a monthly pension benefit from Wausau of $920.69, and that Lampien would also be eligible to receive $716 per month in Social Security benefits upon attaining the age of sixty-two. According to the items listed in the budget, Lampien would thus receive a gross income of $1,636.69 per month, and incur expenses of $1,345.53 per month, leaving substantially less than the requisite $350 per month the

---

**2.** Pending resolution of this appeal, the district court granted a partial stay of sentence, relieving Lampien of the obligation to quitclaim her home to Wausau within thirty days of sentencing.

court had allocated as the minimum restitution payment. Although noting that neither party had anticipated that the initial lump sum payment would include the relinquishment of Lampien's home, the district judge nevertheless ordered Lampien to quitclaim her home to Wausau. When counsel pointed out that Lampien's monthly budget had been computed on the assumption that Lampien would retain ownership of her home free of any mortgage payments, and that her housing expenses would thus entail property taxes, homeowner's insurance and maintenance costs rather than rental payments, the district court replied that when relieved of the expenses associated with owning a home and an automobile, Lampien would be able to afford approximately $380 per month in rent, and that in any event, Lampien could live with her son Terry in her late mother's house for a period of time after her release from prison. In response to counsel's objection that the restitution obligation would be impossible to fulfill given Lampien's lack of earning capacity and limited means, the district judge asserted that "this defendant does have the earning potential and the capacity to pay full restitution." (Sentencing Tr. at 30.)

During the pendency of this appeal, it was determined that Lampien had failed to transfer the amount of her ITT–Hartford annuity (less taxes and penalties for early withdrawal) to Wausau as ordered by the court. At a contempt hearing held on February 8, 1996, it was established that Lampien had provided her attorney with a nonnegotiable check, ostensibly representing the funds in the annuity account. Meanwhile, Lampien had gained access to those funds without her attorney's knowledge by negotiating a different instrument. She then retained the funds from the annuity rather than turning them over to Wausau as required by the court's restitution order. The district court accordingly held Lampien in civil contempt. Following oral argument, this court was advised that Lampien's disclaimer of interest in her late mother's estate had been held invalid under state law, and that Lampien's share of the estate thus did not pass to her son as had been assumed at the time the district court entered the restitution order.

## II. DISCUSSION

### A. *The Victim and Witness Protection Act and homestead property*

Lampien challenges the district court's order directing her to execute a quitclaim deed to her homestead on two grounds. First, Lampien maintains that the VWPA does not authorize a court to force an involuntary disposition of homestead property considered exempt under state law, and that the applicable Wisconsin statute, Wis. Stat. § 815.20 (1994), provides that $40,000 of the value of her home is beyond the reach of the court's restitution order. Second, Lampien contends that if her homestead may be used to satisfy the restitution order, the district court nevertheless exceeded its authority under the VWPA when it ordered her to execute a quitclaim deed to the property in favor of Wausau. In response, the government contends that the Wisconsin homestead exemption is preempted by the VWPA, which expressly allows the district court to reach any property belonging to the defendant for the purpose of making restitution to the victim. The government further argues that the court's decision to order Lampien to execute the quitclaim deed was well within the broad discretion accorded the district judge by the VWPA, and was particularly appropriate in this case in view of Lampien's persistent efforts to evade her restitution obligation. Although we agree that the Wisconsin homestead exemption does not limit the government's power under the VWPA to enforce a lien against the full value of Lampien's home for the purpose of ensuring compliance with a valid restitution order, we also conclude that the enforcement provisions of the VWPA do not authorize the district court to direct Lampien to quitclaim her homestead in favor of Wausau.

The Victim and Witness Protection Act provides that in sentencing a defendant convicted of an offense under Title 18, a district court "may order ... that the defendant make restitution to any victim of such offense." 18 U.S.C. § 3663(a)(1). Because Lampien's challenge to the district court's directive that she quitclaim her homestead in

favor of Wausau is legal in nature, our standard of review is plenary. *See United States v. Reed,* 80 F.3d 1419, 1421 (9th Cir.1996); *United States v. Chaney,* 964 F.2d 437, 451 (5th Cir.1992) (collecting cases); *see also United States v. Barrett,* 51 F.3d 86, 89 (7th Cir.1995). To determine whether the district court exceeded its authority in formulating the order, we look to 18 U.S.C. § 3663(h), which outlines the procedures that may be invoked to enforce compliance with a restitution order. According to the first subpart of that section, "[a]n order of restitution may be enforced—(1) by the United States—(A) in the manner provided for the collection and payment of fines in subchapter B of chapter 229 of this title; or (B) in the same manner as a judgment in a civil action." 18 U.S.C. § 3663(h)(1). Subchapter B of chapter 229, codified at 18 U.S.C. §§ 3611–3615, and governing the collection of fines as well as restitution, in turn imposes "a lien in favor of the United States" that arises at the time of judgment and may be enforced "upon all property belonging to the person fined." 18 U.S.C. § 3613(a); *see also Auclair v. Sher,* 63 F.3d 407, 410 & n. 3 (5th Cir.1995); *United States v. Mills,* 991 F.2d 609, 612 (9th Cir.1993). Moreover, section 3613(c) incorporates a number of the enforcement tools of the Internal Revenue Code that are available to the United States for the collection of unpaid taxes, making them applicable "to [enforce payment of] a fine and to the lien imposed by subsection (a) as if the liability of the person fined were for an internal revenue tax assessment." 18 U.S.C. § 3613(c). The authority to collect an unpaid fine, and thus also to initiate collection of an unsatisfied order of restitution as provided in 18 U.S.C. § 3663(h)(1)(A), is delegated to the Attorney General under section 3612(c). Yet in cases where a defendant fails to satisfy a restitution order, the sentencing court also retains certain powers to enforce compliance, which include revocation of the defendant's term of supervised release and holding the defendant in contempt of court. *See* 18 U.S.C. § 3663(g).

■ We turn first to Lampien's claim that the Wisconsin homestead exemption, Wis. Stat. § 815.20, shields her homestead property from involuntary disposition for the pur-

pose of meeting her restitution obligation. Under the plain language of section 3613(a), upon the court's entry of the restitution order, a lien arose in favor of the United States upon *all* property belonging to Lampien, presumably including her homestead. *See* 18 U.S.C. § 3613(a). Furthermore, as discussed above, 18 U.S.C. § 3613(c) incorporates a full array of procedures available to the United States to enforce a lien against the property of a delinquent taxpayer, making these enforcement mechanisms equally available to ensure compliance with a restitution order. In particular, § 3613(c) incorporates section 7403 of the Internal Revenue Code of 1954, which provides in relevant part that

> the Attorney General or his delegate ... may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability.

26 U.S.C. § 7403(a) (1981). The Supreme Court has held that this broad language allows the government to enforce a lien upon any property owned by a delinquent taxpayer, including homestead property in which the taxpayer's spouse (or any other third party) shares an ownership interest with the taxpayer. *United States v. Rodgers,* 461 U.S. 677, 691–94, 700–02, 103 S.Ct. 2132, 2141–43, 2146–48, 76 L.Ed.2d 236 (1983). The incorporation of § 7403 of the Internal Revenue Code into 18 U.S.C. § 3613(c) thus reiterates the basic premise of section 3613(a), which, when read in conjunction with section 3663(h)(1)(A), provides that upon the district court's entry of a valid restitution order, a lien against all the property belonging to the defendant arises in favor of the United States, and is enforceable to the full extent necessary to satisfy the defendant's restitution obligation. *See* 18 U.S.C. §§ 3663(h)(1)(A), 3613(a); *see also Auclair,* 63 F.3d at 410 & n. 3; *Mills,* 991 F.2d at 612.

■ In light of our discussion of the provisions that govern the enforcement of a restitution order, Lampien's argument that

Congress did not intend that the federal statutory scheme preempt the Wisconsin homestead exemption appears singularly implausible. On its face, the statutory language reveals that Congress meant to reach every interest in property that a defendant has, in order to ensure that the defendant's obligation to make restitution to the victim of her offense is fulfilled. It is, of course, axiomatic that under the Supremacy Clause, "a state statute is void to the extent it conflicts with a federal statute," such as where compliance with both would be impossible, or where the state law " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Maryland v. Louisiana*, 451 U.S. 725, 746–47, 101 S.Ct. 2114, 2128–29, 68 L.Ed.2d 576 (1981) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). A state law that exempts any property belonging to a defendant from execution to satisfy a restitution order is in conflict with the enforcement provisions of the federal statute, and would thwart the essential objective of the statute, namely, to provide restitution to the fullest extent possible for losses that were sustained by the victim and were the direct result of the defendant's crime. Thus, if the Wisconsin homestead exemption applies to shield Lampien's home from the government's lien, or to prevent any part of the proceeds from the sale of her home from being used to satisfy her restitution obligation, the homestead exemption is void under the Supremacy Clause. *See id.*; *Rodgers*, 461 U.S. at 701–02, 103 S.Ct. at 2146–48; *E.E.O.C. v. State of Illinois*, 69 F.3d 167, 169 (7th Cir.1995).

Moreover, we are not entirely convinced that the Wisconsin homestead exemption would apply in this case to prevent the United States from enforcing a valid restitution order, as Lampien maintains. The portion of the Wisconsin statute on which Lampien relies to claim the exemption reads as follows:

> An exempt homestead ... selected by a resident owner and occupied by him or her shall be exempt from execution, from the lien of every judgment and from liability

for the debts of the owner to the amount of $40,000, except mortgages, laborers', mechanics' and purchase money liens and taxes and except as otherwise provided. The exemption shall not be impaired by temporary removal with the intention to reoccupy the premises as a homestead nor by the sale of the homestead, but shall extend to the proceeds derived from the sale to an amount not exceeding $40,000, while held, with the intention to procure another homestead with the proceeds, for 2 years.

Wis.Stat. § 815.20(1) (1994). According to Lampien, the homestead exemption thus operates to allow her to retain $40,000 of the value of her homestead notwithstanding the fact that her restitution obligation to Wausau greatly exceeds this sum.

On its face, the state statute appears to exempt homestead property "from the lien of *every* judgment," *id.* (emphasis added), without making any distinction between civil and criminal judgments, and thus arguably includes restitution orders.[3] Yet as the Wisconsin Court of Appeals recently observed, the homestead exemption was enacted pursuant to Article I, Section 17 of the Wisconsin Constitution, which allows the state legislature to enact laws "exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted." Wis. Const. art. I, § 17; *see Moore v. Krueger*, 179 Wis.2d 449, 507 N.W.2d 155, 158 (Ct.App.1993). Because the homestead exemption was enacted in order to preserve a judgment debtor's home as against her contractual obligations, *see Moore*, 507 N.W.2d at 158, rather than to permit the avoidance of a debt that was incurred under entirely different circumstances, such as where the debt arose as a result of a defendant's criminal conduct, we find it somewhat doubtful that the Wisconsin state legislature intended the homestead exemption to apply to prevent the United States from enforcing a valid restitution order entered by a district court as part of a defendant's criminal sentence. Furthermore, the state statute contains an exception

---

**3.** We do note, however, that Chapter 815 of the Wisconsin Statutes is classified as being part of the state's civil procedure code.

clause (i.e., a homestead is exempt from a judgment lien "except as otherwise provided," see Wis. Stat. § 815.20(1)) that is arguably applicable here, since the VWPA provides that upon the entry of a restitution order, all property owned by a defendant is subject to the government's lien.[4] 18 U.S.C. § 3613(a). In sum, Lampien's contention that she is entitled to invoke the protection of the Wisconsin homestead exemption to avoid the government's lien is not particularly persuasive. In any case, as we have already discussed, the state statute is void under the Supremacy Clause to the extent that it may create an impediment to the government's enforcement of a valid restitution order entered pursuant to the VWPA.

■■■ We turn next to the means the district court has chosen to enforce its restitution order. Lampien maintains that the court exceeded its authority in ordering her to execute a quitclaim deed to her homestead, and we agree. As the First Circuit most recently observed in United States v. Gilberg, "[a] federal court has no inherent authority to order restitution in a criminal case; it may do so only as expressly provided by statute." 75 F.3d 15, 22 (1st Cir.1996). In fashioning a restitution order, a district court is therefore circumscribed by the substantive and procedural limitations outlined in the VWPA. See id.; United States v. Peden, 872 F.2d 1303, 1310 (7th Cir.1989); United States v. Mahoney, 859 F.2d 47, 49 (7th Cir.1988); see also United States v. Joseph, 914 F.2d 780, 786 (6th Cir.1990) (per curiam); United States v. Bruchey, 810 F.2d 456, 459–60 (4th Cir.1987). As we have ex-

plained above, section 3663(h)(1) specifies the procedures that may be invoked by the United States to enforce compliance with a restitution order, and incorporates by reference the procedures available for the collection of fines, which in turn allow the government to utilize a number of the remedies provided under the Internal Revenue Code for the collection of unpaid taxes.[5] See 18 U.S.C. §§ 3663(h)(1), 3613(c); see also Auclair, 63 F.3d at 408–09 & n. 1. Furthermore, in addition to the formidable enforcement tools that may be invoked by the government to ensure that a restitution obligation is met, the district court also retains the authority to revoke a defendant's term of supervised release and to hold her in contempt of court should she refuse to honor the court's restitution order. 18 U.S.C. § 3663(g). Our review of the relevant portions of the VWPA thus leads us to conclude that Congress' careful enumeration of the means by which a restitution order may be enforced, and its designation of those parties authorized to proceed with that enforcement, is intended to be exhaustive. See Andrus v. Allard, 444 U.S. 51, 56, 100 S.Ct. 318, 322, 62 L.Ed.2d 210 (1979); TVA v. Hill, 437 U.S. 153, 173, 188, 98 S.Ct. 2279, 2291, 57 L.Ed.2d 117 (1978). We therefore hold that a district court is limited to effecting the enforcement of a restitution order only as expressly provided by the VWPA. Moreover, because the VWPA does not authorize the enforcement mechanism chosen by the district court in this case, we vacate its order requiring Lampien to quitclaim her interest in her homestead in favor of Wausau.

---

4. As a general matter, Wisconsin courts interpret the exception clause of the statute in a way that renders the homestead exemption consistent with other state laws. See, e.g., C.S. v. Department of Health and Social Services, 134 Wis.2d 363, 397 N.W.2d 133, 134–35 (App.1986). We note that Lampien cites no authority for the proposition that the same approach should not be followed where federal statutes are concerned.

5. In particular, section 7403 of the Internal Revenue Code, incorporated in 18 U.S.C. § 3613(c), provides that upon the filing of a civil action by the Attorney General to enforce the government's lien, any person claiming an interest in the property must be made a party to the action. 26

U.S.C. § 7403(b). After the district court determines the merits of all such claims to the property, it may order the property sold, and may direct the distribution of the proceeds from the sale to the government as required to satisfy its claim. 26 U.S.C. § 7403(c); see also Rodgers, 461 U.S. at 680–83, 697–99, 103 S.Ct. at 2135–37, 2144–46. We further note that although 18 U.S.C. § 3613(c) also incorporates the levy and distraint provisions of the Internal Revenue Code (26 U.S.C. §§ 6331 et seq.) which authorize the seizure and sale of property, under section 6334(a)(13), a taxpayer's (and thus also a defendant's) principal residence is exempt from levy absent one of the exceptions listed in section 6334(e).

## B. *The amount of restitution ordered*

■ Lampien also maintains that the district court abused its discretion in ordering her to pay restitution in the full amount of $498,972.94, and in requiring her to make monthly restitution payments that are plainly impossible for her to meet. The government counters that under our deferential standard of review, the restitution order should be sustained provided it is clear from the record that the district judge considered the factors mandated by 18 U.S.C. § 3664(a) when he entered the order.

Under section 3664(a), in determining whether to order restitution and setting the appropriate amount of restitution, the district judge "shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. § 3664(a). As this court explained in *Mahoney*, the VWPA thus requires the district judge "to balance the victim's interest in compensation against the financial resources and circumstances of the defendant—all while remaining faithful to the usual rehabilitative, deterrent, retributive, and restrictive goals of criminal sentencing." 859 F.2d at 49 (quoting *Bruchey*, 810 F.2d at 458) (internal quotations omitted); *see also United States v. Murphy*, 28 F.3d 38, 40 (7th Cir.1994) (same); *United States v. Studley*, 892 F.2d 518, 531 (7th Cir.1989) (same); *Peden*, 872 F.2d at 1310 (same). As the *Mahoney* court recognized, although the statute places the burden of demonstrating the defendant's financial resources and needs squarely on the defendant, *see* 18 U.S.C. § 3664(d), it also mandates that the sentencing judge consider those resources and needs prior to entering an order of restitution. *Mahoney*, 859 F.2d at 49.

■ Moreover, although a restitution order is reviewed only for an abuse of discretion, *see, e.g.*, *United States v. Johnson–Wilder*, 29 F.3d 1100, 1105–06 (7th Cir.1994), we observe that appellate courts have not been hesitant to vacate a restitution order where it is clear from the record that the defendant is unable to satisfy the order. *See id.* at 1106–07; *Murphy*, 28 F.3d at 41–42; *Mahoney*, 859 F.2d at 51–52; *see also United States v. Copple*, 74 F.3d 479, 484–85 (3d Cir.1996); *United States v. Logar*, 975 F.2d 958, 962–64 (3d Cir.1992) (collecting cases); *United States v. Ramilo*, 986 F.2d 333, 336 (9th Cir.1993) (collecting cases); *United States v. Porter*, 41 F.3d 68, 72–73 (2d Cir. 1994) (Winter, J., concurring) (collecting cases). This willingness to vacate facially impossible restitution orders rests on significant policy considerations, as was explained by the *Mahoney* court and echoed by numerous others:

> [A]t the time the court orders restitution it is most paramount that the defendant, in the all-important rehabilitative process, have at least a hope of fulfilling and complying with each and every order of the court. Thus, an impossible order of restitution, as made in this case, is nothing but a sham, for the defendant has no chance of complying with the same, thus defeating any hope of restitution and impeding the rehabilitation process.

859 F.2d at 52. Thus, as the Ninth Circuit observed, "[i]t is vital to the success of rehabilitation that the restitution obligation imposed upon the defendant ... be one the defendant is capable of satisfying." *Ramilo*, 986 F.2d at 336 (relying in part on *Mahoney*, 859 F.2d at 52); *see also United States v. Bailey*, 975 F.2d 1028, 1032 (4th Cir.1992) ("A district court's failure to make a restitution order with which a defendant could possibly be expected to comply threatens respect for judicial orders generally."); *United States v. Remillong*, 55 F.3d 572, 574 (11th Cir.1995) (per curiam) (same).

In this case, the record raises serious doubts as to whether the district court accurately assessed Lampien's financial resources and capability to fulfill the terms of its order when it directed Lampien to make full restitution. As in *Mahoney*, the restitution order itself, which requires Lampien to pay $498,972.94 to Wausau over a period of fifty-four months, despite the fact that the only income she can reasonably expect to receive during that period consists of pension and Social Security benefits totaling approximately $19,-

650 per year, appears on its face to be impossible to satisfy. *Cf. Mahoney,* 859 F.2d at 51 ("[w]e fail to perceive how this defendant . . . will somehow be able to repay a debt totalling more than nine times his annual salary in five years"). Moreover, the judge's statement at sentencing that "this defendant does have the earning potential and the capacity to pay full restitution," (Sentencing Tr. at 30), appears to be directly contradicted by the probation department's findings in the presentence report. The report reveals that Lampien, who at the time of sentencing was sixty years old, began working for Wausau upon finishing high school, that she has never held any other job, and that her adjusted gross income during the years preceding her arrest averaged approximately $19,000 per year. Furthermore, Lampien suffers from "severe asthma, high blood pressure, and arthritis in her lower back," (Presentence Report at para. 63), and appears to have significant emotional problems, leading both the probation department and the district court to recommend to the Bureau of Prisons that Lampien receive a full mental health evaluation while in custody. We also cannot ignore the fact that Lampien's offense against her life-long employer creates a very serious impediment to her ever being able to obtain remunerative employment in the future. *See Johnson–Wilder,* 29 F.3d at 1106. In light of these undisputed facts, it is highly unlikely that Lampien will ever be capable of earning any income beyond her vested pension and Social Security benefits. And finally, we observe that the district judge did not consider any part of the embezzled funds as being available for restitution. We therefore discern no reasonable basis for the judge's assertion that Lampien has the ability to pay full restitution.

■Our view that the district court did not accurately assess Lampien's financial condition is further bolstered by the fact that it ordered Lampien to make minimum installment payments of $350 per month. Apart from the fact that Lampien could never fulfill her restitution obligation at this rate

of payment, the budget contained in the presentence report (and relied on by the district court) indicates that Lampien would have substantially less than the requisite $350 per month available to allocate to restitution payments. Moreover, this budget was calculated on the assumption that Lampien would retain possession of her residence, which she owned clear of any mortgage, and that her housing needs would thus be relatively easily met. In ordering Lampien to relinquish ownership of her home as part of her initial lump sum payment, it is clear from the sentencing transcript that the judge did not fully consider the financial repercussions of that course.[6] For these reasons also, the restitution order must be vacated.

■We are not, however, unmindful of the dilemma facing a district court in fashioning an appropriate restitution order for an uncooperative defendant who has given the court ample reason to believe that she is hiding assets. The difficulty of the court's task is further compounded where there is some possibility that the defendant could be in control of a portion of the funds she has embezzled. As vital as it may be to the rehabilitative process that a defendant not be ordered to make restitution payments that are impossible for her to meet, it is equally important that she not be permitted to profit from her crime. Harmonizing these policy considerations is most problematic in a case where the defendant has not been forthcoming with the district court concerning her resources. We believe that the approach recently adopted by the Third Circuit, which has support in our own law and in the statutory language, may assist the district court in resolving this difficulty. In *Copple,* the Third Circuit held that "the responsibility for accounting for funds misappropriated [belongs] squarely on the individual who misappropriated them." 74 F.3d at 484. The court in that case found strong support in the statute for assigning this burden to the defendant, since section 3664(d) requires the defendant to demonstrate his financial resources. *Id.; see* 18 U.S.C. § 3664(d).

---

**6.** As discussed above, although the order directing Lampien to quitclaim her home to Wausau is invalid, the government may proceed to enforce its lien on any property owned by Lampien, including her homestead.

Thus, as a starting point for calculating the total amount of restitution, the Third Circuit held that the sentencing court may take the total amount of the victim's loss for which the defendant had not yet accounted. Before arriving at a final figure, the district court should give the defendant an opportunity "to prove that [s]he is, in fact, not in possession of any part of that total amount." *Copple*, 74 F.3d at 484.

Applying this reasoning to our case, if Lampien is unable to prove to the satisfaction of the district judge that she no longer possesses any part of the nearly one-half million dollars she embezzled, the judge may, in his discretion, consider the resulting amount as being available for purposes of restitution. *See id.; see also United States v. Boyle*, 10 F.3d 485, 492 (7th Cir.1993) (where evidence indicated that defendant may still have access to embezzled funds, it was within the court's discretion to consider amounts stolen and unaccounted for as being available for restitution). We believe that this approach strikes a just balance between the interests of rehabilitating the defendant, assuring that the defendant's financial resources and needs are duly considered, and providing restitution to the victim. *See* 18 U.S.C. § 3664(a). And, in a case where there is evidence that the defendant has attempted to hide her resources, this approach provides an added incentive to the defendant to be forthright with the court in accounting for all of her assets.

## III. CONCLUSION

For the foregoing reasons, the restitution order is VACATED, and this case is REMANDED to the district court for further proceedings consistent with this opinion.

MANION, Circuit Judge, concurring.

I concur with the court's decision to vacate the order of restitution and remand the matter to the district court for entry of a more appropriate order. I write separately to make two points. First, I agree that the district court exceeded its authority in requiring Lampien to deed her home to Wausau as part of its restitution order. Except where the court is directing the return of

property to its rightful owner, *see* 18 U.S.C. § 3663(b)(1)(A), which is not the case with Lampien's home, an order of restitution should generally be a dollar amount payable with whatever financial resources are at the defendant's disposal. (An exception would arise where the victim consents to services in lieu of money under 18 U.S.C. § 3663(b)(5).) Thus if Lampien has other means of paying the required restitution (e.g., helpful family members, lucky lotto number, etc.), she should be allowed to keep her home. However, there is no question that Lampien's home can be sold in a foreclosure action to enforce the order of restitution if she is otherwise unable to meet her obligations. *Id.* §§ 3663(h)(1) & (2) and 3613(a) & (e); 26 U.S.C. § 7403(c).

Second, I agree that an order of restitution cannot be impossible. I'm sure the district court understood that as well, but it faced a difficult situation. Lampien stole nearly half a million dollars in a relatively short period of time. A garage full of apparently worthless clothes seems to be the only proceeds recovered. Either she blew a lot of money in a hurry in some other way (e.g., gambling) or she has a pile of cash stashed somewhere. There should be some mechanism to ensure that if any of the stolen money surfaces, it can be recovered. Perhaps the statutes could countenance a contingency order requiring payment against a lump sum due in the event the stolen money reappears, or some other mechanism to ensure appropriate restitution. That is for the district court to decide in the first instance.

As for the order to pay $350.00 per month, when all the facts are known, such a payment may not be an abuse of discretion. It is well established in this circuit that " 'a person actually unable to pay may be directed to make restitution, provided there is some likelihood that he will acquire resources in the future.' " *United States v. Reynolds*, 64 F.3d 292, 298 (7th Cir.1995) (quoting *United States v. Ahmad*, 2 F.3d 245, 247 (7th Cir. 1993)). As the district court noted, upon Lampien's release from incarceration, she will be eligible to receive Social Security benefits of $716 per month in addition to a monthly pension benefit of $920, for a total of

$1,636 per month or almost $20,000 per year. If Lampien is ultimately able to keep her home, which she owns clear of any mortgage, then with some modest belt-tightening her income will more than cover a $350 monthly payment. But even if she is forced to sell her home and seek out another residence, it is likely that she could still make the payment. The presentence report indicated expenses of $50 a month for water and sewer, $35 for homeowner's insurance, $44 for cable television, $167 for property taxes, $150 for clothing, and $39 for telephone, which includes expensive specialty features such as call waiting, caller identification, speed calling and multi-ring services. Without a home, the water and sewer, homeowner's insurance, cable television and property tax expenses can be eliminated, yielding $296 in savings. The presentence report indicated telephone costs could be reduced by $12 a month by canceling luxury services, and $50 a month is plenty for clothes shopping at thrift and second-hand stores (especially when the record indicates she has a house and garage packed full of clothing purchased in part with the proceeds of her crime), so that frees up another $100, for a total savings of $408 … and so on. How much savings can be squeezed from Lampien's budget is unclear once the costs of a (very) modest apartment are factored in, but I suspect it is more than enough to make a $350 monthly payment possible.

There are of course limits to the amount of restitution that can be ordered. There must be at least some possibility of payment, either immediately or down the road. But one who steals almost $500,000 cannot complain if as part of making restitution for her crime she must live in a small inexpensive apartment, perhaps with a roommate, limit herself to $50 a month in clothing, forego cable television, and field only one call at a time. That is hardly penury.

I concur on this point because the total amount of restitution ordered was impossibly large given Lampien's present and (likely) future resources. And as one of several parts of the restitution order, the $350 monthly payment cannot be viewed in isolation. We vacate the entire order and re-mand for the district court to reformulate an appropriate (i.e., not impossible) order. In so doing the district court must decide whether to establish a time limit with a schedule of installments under the limitations of 18 U.S.C. § 3663(f)(2), or to order payment of a specified amount without a deadline or payment schedule, *see id.* § 3663(a)(1), subject to the dictates of a subsequent enforcement action. *See United States v. House,* 808 F.2d 508, 510–11 (7th Cir.1986). These are matters for the sound discretion of the district court.