**UNITED STATES of America, Appellee,**

v.

**Bernard JAFFE, Jr., Defendant–Appellant.**

**Docket No. 04–1278–cr.**

United States Court of Appeals, Second Circuit.

Argued: Oct. 28, 2004.

Decided: Aug. 2, 2005.

Walter Mack, Doer Rieck & Mack (David Rivera and Eileen Minnefor, on the brief), New York, New York for Defendant-Appellant.

Miriam H. Baer, Assistant United States Attorney (David N. Kelly, United States Attorney for the Southern District of New York, on the brief, Peter G. Neiman, of counsel), for Appellee.

Before: WINTER, KATZMANN, and RAGGI, Circuit Judges.

WINTER, Circuit Judge.

Bernard Jaffe, Jr., who pled guilty to making false statements to a federally-insured bank, appeals from a restitution order entered by Judge Hellerstein. He claims that the restitution schedule violates the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A *et seq.;* violates the Consumer Credit Protection Act ("CCPA"), 15 U.S.C. § 1601 *et seq.;* exceeds the district court's authority by ordering payment from a specific asset; violates the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1056; and should have been less severe given the uncertainties of his financial situation. We reject these arguments and affirm.

## BACKGROUND

Jaffe was a Vice–President of Salomon Smith Barney and a longstanding Bank of New York ("BNY") customer. In the mid–1980's, BNY extended him ever increasing unsecured loans for purposes of his personal trading in the stock market. In order to secure a credit line for each year, Jaffe was required to repay the entire line of credit from the preceding year and provide BNY with a signed financial statement setting forth his assets and liabilities. These statements sometimes included Form W–2 Wage and Tax Statements. Each year Jaffe was able to repay BNY using the profits from trading as well as funds borrowed from other banks. Stock market declines in 2000 and 2001, however, left Jaffe unable to repay the $20 million lent him by BNY in 2000. In January 2002, Jaffe so informed BNY and proposed payment over a five year period. BNY filed a complaint with the FBI alleging that Jaffe had defrauded it out of $20

million by submitting false financial information in order to obtain his loans. The ensuing investigation revealed that Jaffe had submitted false W–2 forms, false portfolio valuation statements, and false tax returns. BNY also commenced civil litigation against both Jaffe and his daughter in New York and Florida.

On May 2, 2003, Jaffe pled guilty to one count of making a false statement to a federally insured bank in violation of 18 U.S.C. § 1014. In his plea agreement, Jaffe stipulated that his range of imprisonment under the Sentencing Guidelines was 51–63 months.

Three issues were contested at sentencing: (i) whether Jaffe was entitled to credit for acceptance of responsibility; (ii) whether Jaffe was entitled to a downward departure for extraordinary family circumstances; and (iii) the appropriate restitution schedule. *United States v. Jaffe,* 314 F.Supp.2d 216, 217 (S.D.N.Y.2004). In decisions not challenged on appeal, Judge Hellerstein granted Jaffe credit for acceptance of responsibility but denied his request for a downward departure for extraordinary family circumstances. *Id.* at 228.

The issues raised on appeal all involve the schedule for restitution payments to BNY imposed by the court.[1] Prior to sentencing, the Department of Probation had recommended that Jaffe be required to pay restitution in "monthly installments of not less than 15% of [his] total monthly income over a period of supervision to commence 30 days after … release from custody …." Instead, the district court ordered Jaffe to pay restitution "according to the following schedule: (i) $100,000 by

March 19, 2004; (ii) $1.5 million by January 31, 2005; and (iii) Installments of the greater of $150,000 or fifteen percent of Jaffe's post-tax annual net income, by January 31, 2005, and every successive January 31 thereafter." *Id.* The district court has since modified the restitution order to set the $1.5 million payment for September 15, 2005, instead of January 31, 2005, and to begin the installment payments of $150,000 on January 31, 2006, instead of January 31, 2005.

The district court fashioned the restitution schedule based on Jaffe's assets and income. Not including almost $2 million in assets transferred between 1997 and 2002 to his daughter, son, and girlfriend, Jaffe owns a mortgage-free condominium in Palm Beach, Florida worth approximately $1.3 million; an individual retirement account ("IRA") worth approximately $1.9 million; and a Lehman Brothers annuity account worth approximately $220,000. Based on monies received from social security, his pension/annuity, his IRA distribution, and the Lehman Brothers account, Jaffe's annual gross income is $213,703. According to Jaffe, his annual net income is only $139,512.

The district court declined to consider Jaffe's claim of financial obligations to his adult daughter, Brenda Jaffe, who is said to suffer from depression and cancer. The court found that Jaffe owed "no financial obligation, legal or moral, to prefer her over the victim of his fraud." *Id.* at 225. The district court found that the daughter, Brenda, was neither a dependent nor a mental incompetent. *Id.* It stated that "Jaffe's desire to continue to funnel proceeds gained from his frauds to his family

---

**1.** On November 1, 2004, and January 26, 2005, Jaffe submitted letters to this court requesting permission to file a supplemental brief addressing sentencing issues raised by *United States v. Booker,* — U.S. —, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) and *United States v. Lauersen,* 362 F.3d 160 (2d Cir. 2004). However, in a letter dated June 17, 2005, Jaffe withdrew his earlier request to file the supplemental brief.

does not constitute a 'financial obligation[ ] ... to dependents' which should be considered under 18 U.S.C. § 3664(f)(2)(C), in fashioning a restitution payment schedule to the victim of his fraud." *Id.* (alterations in original). In creating the restitution schedule, the district court also rejected Jaffe's arguments that the lump sum payment requirements would violate Florida's homestead law by requiring him to sell his Florida condominium, *id.* at 226–27; that the restitution schedule would leave him destitute, especially if BNY prevailed in its civil litigation, *id.* at 227; and that use of payments from his pension plan to meet the schedule would violate ERISA's anti-alienation clause, *id.* at 227–28.

## DISCUSSION

 Jaffe renews on appeal the arguments made in the district court, and we deal with those in turn. In the case of restitution orders, we review issues solely of law *de novo*, findings of adjudicative fact for clear error, and the multi-factor balancing aspects of such an order for abuse of discretion. *United States v. Lucien*, 347 F.3d 45, 52–53 (2d Cir.2003). As we stated in *United States v. Ismail:*

> Because a restitution order requires a delicate balancing of diverse, sometimes incomparable factors, ... the sentencing court is in the best position to engage in such balancing, and its restitution order will not be disturbed absent abuse of discretion. [I]t makes little sense for an appellate court, significantly more removed from the case than the district court, to scrutinize the decision closely.

219 F.3d 76, 78 (2d Cir.2000) (per curiam) (second alteration in original) (internal quotation marks and citations omitted).

### a) *MVRA and Brenda Jaffe*

 The MVRA directs district courts to order restitution in the full amount of each victim's loss "without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). In fashioning a schedule for full restitution the district court must consider:

> (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;
>
> (B) projected earnings and other income of the defendant; and
>
> (C) any financial obligations of the defendant; including obligations to dependents.

18 U.S.C. § 3664(f)(2)(A)-(C). With regard to financial obligations, the defendant has the burden of establishing any financial obligation to an alleged dependent. 18 U.S.C. § 3664(e).

Jaffe urges us to vacate the schedule and remand because the district court expressly declined to consider Jaffe's financial obligations to his daughter Brenda. *Jaffe*, 314 F.Supp.2d at 225. Brenda Jaffe is a 43–year old, educated woman who lives alone in Delray Beach, Florida. She suffers from depression, anxiety disorders, and more recently breast cancer. Jaffe does not claim that Brenda has been declared legally incompetent or that he has legally enforceable obligations to her. She has declined to disclose her financial circumstances for purposes of this proceeding, and there is no basis for knowing her financial needs.

Dependents are defined differently in different legal contexts,[2] and we have nev-

---

**2.** For tax purposes, dependents are designated individuals, including sons or daughters, over half of whose support is received from the taxpayer, whether or not the taxpayer is legally obligated to provide support. 26 U.S.C. § 152(a), (c)-(d). In contrast, in the bankruptcy context, courts often reject debtor's attempts to expend resources to support

er defined dependent for purposes of the MVRA. Jaffe argues that because adult spouses are considered dependents under the MVRA, *see United States v. Carboni*, 204 F.3d 39, 47 (2d Cir.2000), adult children should be given similar status. We do not agree.[3]

■ We hold that for purposes of Section 3664, a "dependent" is someone that the defendant has a legal obligation to support. Even if status as a "dependent" varies with the legal context, there is no reason to indulge in a judge-made expansion of the term without some basis in federal, state, or local law. The MVRA was designed to compensate victims by ensuring that criminal defendants "pay full restitution to the identifiable victims of their crimes." S.Rep. No. 104–179, at 12 (1995), *reprinted in* 1996 U.S.C.C.A.N. 924, 925. It would dilute that purpose to construe "dependent" as requiring sentencing judges to consider every relationship that might be deemed a moral obligation. Criminals have obligations to victims that Congress deemed sufficiently important to render them legally enforceable. To construe "dependents" to include various family members, friends, and lovers based on vague and expandable concepts of moral obligations would put such persons on a par with victims, render enforcement of resti-

tution orders difficult by generating issues as to whether the defendant owes and is actually fulfilling such obligations, and create a variety of depositories useful to shield a defendant's assets from those victims.

Having said that, we note that our holding is only that mandatory consideration of "obligations to dependents" under Section 3664(f)(2)(C) is limited to legal obligations. We need not and do not decide whether moral obligations to children or others may not in extraordinary circumstances—clarity of need and obligation, assurance of fulfilling the obligation, and low risk of asset concealment—be considered by a district court in the exercise of its discretion.

Because Jaffe has no legal obligation to support his adult daughter Brenda, it was not error for the district court to decline to consider her circumstances in setting a restitution schedule.

#### b) *CCPA*

■ Garnishment is defined by the CCPA as "any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt." 15 U.S.C. § 1672(c). Section 303 of the CCPA restricts garnishment to twenty-five percent of a debtor's weekly disposable earnings, or the amount

---

individuals that they are not legally obligated to support. *See In re Mastromarino*, 197 B.R. 171, 178 (Bankr.D.Maine 1996) (holding debtor's choice to support his domestic partner and her four children subordinate to his legal obligations to creditors and accordingly disregarded the additional household income and expenses attributable to such choice); *In re Davidoff*, 185 B.R. 631, 635–36 (Bankr. S.D.Fla.1995) (dismissing debtor's case for cause under 11 U.S.C. § 707(a) because debtor lived expensive lifestyle incurring expenses for among other things his second wife's child who was not his dependent and for whom the wife received child support).

**3.** For example, under New York state law, adult spouses owe each other a duty of support, *see* N.Y. Fam. Ct. Act § 412 (married person is chargeable with the support of his or her spouse), whereas parents owe a duty of support only to their minor children, *see* N.Y. Fam. Ct. Act § 413 (the parents of a child under the age of twenty-one years are chargeable with the support of such child), absent a court order such as a decree of incompetence and/or a guardianship. N.Y. Mental Hyg. Law § 81.21.

by which his other disposable earnings exceed thirty times the federal minimum hourly wage, whichever is less. 15 U.S.C. § 1673(a). "No court of the United States or any State, and no State (or officer or agency thereof), may make, execute, or enforce any order or process in violation of [Section 303]." 15 U.S.C. § 1673(c).

Jaffe urges us to vacate the restitution schedule as violative of the CCPA because, although his net income is allegedly only $139,000, the schedule requires him to make installment payments to BNY of $150,000 per year. We hold, as did the district court, that because the court never entered an order of garnishment, the restitution order cannot violate the CCPA.

On the face of its language, Section 1673 does not apply to an order that simply directs restitution payments and does not restrain the use of specific funds. We see no reason whatsoever to depart from that language and accordingly decline to hold that an order that one pay money is a garnishment.

In arguing otherwise, appellant relies upon *United States v. Giwah,* in which we vacated and remanded an order of restitution because its terms did not evidence sufficient consideration of the financial needs of the defendant and his dependents. 84 F.3d 109, 114–15 (2d Cir.1996), *superseded by* statute as stated by *United States v. Walker,* 353 F.3d 130, 131–33 (2d Cir.2003). In vacating the order, we mentioned that the CCPA reflected Congress's concern that restitution orders not reach certain minimum earnings. *Id.* at 115. We inferred this concern because restitu-

tion orders are enforceable like civil judgments and the CCPA mandates that civil judgments not reach certain minimum earnings through garnishment. *Id.* However, we did not hold that a restitution order under the MVRA constitutes a garnishment governed by the CCPA.[4] Rather, *Giwah* indicated only that the CCPA is helpful in determining Congress's intent that the financial resources of a defendant be considered in determining a restitution schedule.

Therefore, because a garnishment order restraining specific funds was never entered, the restitution order did not implicate the CCPA.

c) *Payment from Specific Assets*

█ The MVRA provides that a restitution award may be enforced against "all property or rights to property of the person," except for property that falls within the exemptions set forth in Section 6334(a)(1)-(8),(10) and (12) of the Internal Revenue Code. 18 U.S.C. § 3613(a),(a)(1). This language does not include Section 6334(a)(13) of the Internal Revenue Code, which exempts residences. 26 U.S.C. § 6334(a)(13). Moreover, Section 3664 allows a district court to order that restitution be made in "a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments." 18 U.S.C. § 3664(f)(3)(A). It also authorizes the government or the victim to enforce a restitution order through a series of specific means including "all other available

---

4. Moreover, *Giwah* was decided under the pre-MVRA restitution statute, *Giwah,* 84 F.3d at 113–14, and before we held that, under the MVRA, we would no longer "vacate and remand, as we did under the prior statute, solely by reason of the sentencing judge's failure to indicate consideration of the man-

datory factors." *Walker,* 353 F.3d at 134. In addition, the defendant in *Giwah* earned "barely enough to pay routine living expenses" making it facially problematic that the sentencing judge had considered his financial resources. *Giwah,* 84 F.3d at 115.

and reasonable means." 18 U.S.C. § 3664(m)(1)(A)(ii).

Jaffe argues that the district court does not have the authority to order the lump sum payment of $1.5 million because under the MVRA, district courts are not given the express authority to require payment of restitution from specific assets. Appellant claims in particular that he will be forced to sell his Florida home.

Whether or not a district court may designate specific assets as a required source of restitution,[5] the present order does no such thing. It leaves the choice of assets to be tapped to appellant. In fact, nothing in the order requires Jaffe to satisfy his restitution obligations from his current income or assets, should he be able to secure some other source of funds, such as a loan. Moreover, even if compliance with a restitution order will ultimately force a defendant to sell specific assets, such a potential or even inevitable consequence does not lessen the district court's authority—indeed, obligation—to order full restitution. Given that the district court did not require payment of restitution from a specific asset, we need not address whether the court had authority to order a defendant to sell or convey his home.[6]

### e) ERISA

■ ERISA mandates that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). The MVRA states that "[n]otwithstanding any other Federal law ... a judgment imposing [restitution] may be enforced against all property or rights to property of the [defendant] ...." 18 U.S.C. § 3613(a). Section 3613(a) lists certain types of property exempt from its reach, but does not include in that list ERISA plan benefits. Jaffe argues that it was error for the district court to fashion a restitution schedule that will require him to alienate all of his pension and retirement distributions including the ERISA-qualified Citigroup pension.

In *Guidry v. Sheet Metal Workers National Pension Fund*, 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990), the Su-

---

5. The only case to discuss the argument put forth by Jaffe is *United States v. Lampien*, 89 F.3d 1316, 1319, 1322 (7th Cir.1996), a Seventh Circuit decision interpreting the Victim and Witness Protection Act ("VWPA"), the precursor to the MVRA. In *Lampien*, the district court's restitution order directed a defendant to make a lump sum payment that included the execution of a quitclaim deed conveying the defendant's interest in her home. *Id.* at 1317. In that case, the Seventh Circuit held that because Sections 3663(g)-(h) specify procedures to enforce compliance with restitution orders, Congress intended those procedures to be exhaustive, thereby precluding the district court's quitclaim order. *Id.* at 1322. Unlike *Lampien*, Jaffe was ordered only to make a lump sum cash payment to BNY, not to execute a deed conveying his home to the bank.

6. Jaffe also argues that the restitution order encroached on the authority of the State of Florida by requiring a lump sum payment that necessitated the sale of his home. Florida's homestead exemption provides that a person's home is "exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon ...." Fla. Const. art. X, § 4(a). When a state law conflicts with a federal statute, it is preempted. *See Nat'l Helicopter Corp. of Am. v. City of New York*, 137 F.3d 81, 88 (2d Cir.1998). *See also United States v. 817 N.E. 29th Drive, Wilton Manors, Florida*, 175 F.3d 1304, 1311–12 n. 14 (11th Cir.1999) (federal forfeiture law preempts the Florida homestead exemption); *Lampien*, 89 F.3d at 1322 (VWPA, the precursor to the MVRA, preempts Wisconsin homestead provision). However, given that the district court did not require Jaffe to sell his home, we need not address whether any such conflict exists because there is no resultant "forced sale under process of any court" or "lien."

preme Court held that a constructive trust in favor of a union could not be imposed on the retirement benefits of a union official convicted of embezzling union funds. The Supreme Court found it inappropriate to "approve any generalized equitable exception—either for employee malfeasance or for criminal misconduct—to ERISA's prohibition on the assignment or alienation of pension benefits." *Id.* at 376, 110 S.Ct. 680. It held that the anti-alienation provision

> reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task.

*Id.*

However, unlike *Guidry,* the restitution order here places no restraint on funds that remain in the custody of an ERISA plan administrator. The order does not even specifically direct that restitution payments be from a distribution by the administrator to appellant. As already noted, it simply orders payments by appellant from whatever source he chooses.

■ ERISA "protects benefits only while they are held by the plan administrator and not after they reach the hands of the beneficiary." *Robbins v. DeBuono,* 218 F.3d 197, 203 (2d Cir.2000) (holding ERISA's anti-alienation provision did not bar wife from receiving her institutionalized husband's pension benefits after they have left the plan administrator's hands). *See also United States v. Jackson,* 229 F.3d 1223, 1225 (9th Cir.2000) ("ERISA's anti-alienation clause does not apply to pension funds that have already been distributed to the beneficiary."); *Trucking Employees of N. Jersey Welfare Fund,*

*Inc. v. Colville,* 16 F.3d 52, 56 (3d Cir.1994) (same). *But see United States v. Smith,* 47 F.3d 681, 683–84 (4th Cir.1995) (holding ERISA's anti-alienation provision protects pension funds from being applied to restitution ordered under VWPA).

Under *DeBuono,* therefore, ERISA is not implicated, and we need not determine whether the "notwithstanding any other Federal law" language of the MVRA, enacted after ERISA, creates an exception to ERISA's anti-alienation provision.

**f) *Uncertainty Created by Pending Litigation***

■ Finally, Jaffe argues that given the uncertainties of his financial situation because of the pending litigation against him and his daughter, the district court's restitution schedules should have been less severe. Because the district court retains jurisdiction to amend or adjust the restitution order if there is any material change in Jaffe's economic circumstances, the uncertainty of his financial situation is irrelevant. *See* 18 U.S.C. § 3664(k), (*o*). The district court ordered restitution according to Jaffe's circumstances at the time the order was issued. If in the future Jaffe's relevant circumstances change that will be the appropriate time to alter the restitution order.

## CONCLUSION

For the reasons stated, we affirm.